Ex parte NORMAN S. BOWLES.
[No. 108, October Term, 1932.]

*Decided March 2nd, 1933.*

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, and PARKE, JJ.

*Norman S. Bowles, in propria persona.*

*J. Lloyd Harshman, State's Attorney for Washington County,* opposed.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Washington County, dated August 16th, 1932, adjudging the appellant guilty of contempt of that court. The contempt was found to be the filing by the appellant in the Circuit Court for Washington County of a paper entitled, "Motion and affidavit," in the following language: "Comes now the plaintiff Norman S. Bowles, and moves the court to certify the above-entitled cause to another Judge other than the Honorable Frank G. Wagaman, and for reasons says: That he does not believe that he can obtain a fair and impartial trial before the said Judge. Norman S. Bowles." The affidavit attached to and accompanying the motion follows:

320

"District of Columbia, ss: Norman S. Bowles, being duly sworn, on oath deposes and says: That he is a citizen of the District of Columbia and that the defendant Mathias P. Moller, is a citizen of Hagerstown, Maryland; that said defendant is the father-in-law of the son of the Honorable Frank G. Wagaman and that the affiant believes that said son John Wagaman, will be one of the attorneys for the defendant at any trial in this cause; that at a recent trial before the Honorable Frank G. Wagaman, Equity No. 11,905, in which plaintiff herein, M. P. Moller, the defendant herein and John Wagaman the said son of Frank G. Wagaman were interested parties, the said Judge stated in open Court that the filing of a petition by the plaintiff herein was done for ulterior motives and that during the hearing the plaintiff herein believes that the said Judge Wagaman aided his said son in contesting the plaintiff's right to intervene; that his belief was confirmed by many members of the Hagerstown Bar (attorneys practicing in Washington County) who so expressed themselves to the affiant and it was the general belief as expressed by many other persons to the plaintiff herein that the said plaintiff could not obtain a fair and impartial trial in any matter in which M. P. Moller and John Wagaman were interested if said trial was presided over by the Honorable Frank G. Wagaman. Norman S. Bowles. Subscribed and sworn to before me this 5th day of May, 1932. Catherine P. Offutt, Notary Public, D. C. [N. P. Seal.]"

This motion and affidavit were filed on May 27th, 1932; whereupon the following petition was filed in that court by the state's attorney for the county, wherein it is stated:

"1st. That one Norman S. Bowles filed on the 5th day of May, 1932, in No. 80 Appearances, May Term, 1932, in the Circuit Court for Washington County, a certain motion and affidavit, certified copy of which motion and affidavit is attached hereto and made a part hereof, and marked 'Exhibit Motion and Affidavit.' 2nd. That said motion and affidavit is deemed by your petitioner to contain therein impertinent, scandalous,

insulting and contemptuous language reflecting on the integrity of said Honorable Court, especially upon the Honorable Frank G. Wagaman, one of the Judges of said Court. To the end therefor: That this Honorable Court may pass an order upon the said Norman S. Bowles requiring him to show cause, if any he has, by a certain day to be named in said order why he should not be held in contempt of Court."

Upon this petition an order was passed by Hon. D. Lindley Sloan, one of the judges of the said Circuit Court for Washington County, in these words:

"The aforegoing petition, affidavit and exhibit having been read and considered, it is thereupon this 26th day of May, A. D. 1932, by the Circuit Court for Washington County, ordered that Norman S. Bowles, within five days after a copy of the aforegoing petition, affidavit and this order of Court have been served upon him, answer said petition and show cause, if any he has, why he should not be held in contempt of Court."

The papers, including a copy of this order, were served upon the appellant on July 2nd, 1932. On July 7th the appellant filed an answer under oath to the show cause order, wherein it is alleged:

"That he never intended to be disrespectful to the Court or to the Honorable Frank G. Wagaman; that he has practiced law in the District of Columbia and in the Federal Courts of the United States and that under the statutes in the said District of Columbia and in the Federal Courts any person attempting to disqualify a judge from sitting in any case must file ten days before the beginning of the term of Court at which the matter is to be heard a motion supported by an affidavit setting forth facts, which if true, would be sufficient to disqualify such judge; that respondent was informed and therefore believes that it was the practice to file a motion before any term of Court (in the State of Maryland) so that the Clerk and the Judge

might certify any matter that would ordinarily be set for a hearing at such term to another county or before another judge; that respondent believed that he had to state facts which he believed to be true in the form of an affidavit to support a motion to disqualify; that every fact set forth in his affidavit he believes to be true; first, John Wagaman is the attorney of record in the matter; that the defendant is related to the Honorable Frank G. Wagaman by marriage; that four members of the Hagerstown bar (now in good standing and among the leaders of said bar) voluntarily expressed to the respondent that the Honorable Frank G. Wagaman had aided his son and one J. Lloyd Harshman in the conduct of Equity case No. 11,905 and that others present in the Court during the hearing of said matter had also expressed the same opinion; that while the said aid may have been unconsciously given as would be only natural interest of a father for a young son, yet the respondent honestly believes that he cannot have that fair and impartial trial which the law of the State of Maryland extends to all persons, in any matter in which M. P. Moller and John Wagaman are interested parties; that as to the statement made by the Honorable Frank G. Wagaman and set forth in the respondent's affidavit, to wit: 'That the filing of a petition by the plaintiff herein was done for ulterior motives' respondent is ready and willing to prove that such statement was made in open Court and the respondent believed that same was not justified by any evidence offered in court or by any conduct on the part of the respondent or his joint petitioner; that further the respondent herein accused the son of the Honorable Frank G. Wagaman and the attorney filing the petition herein with deliberately deceiving court in that these two attorneys actually represented the plaintiff and the defendant in Equity No. 11,905, filed every paper filed by either the said plaintiff or the defendant, but they caused the papers filed on behalf of the defendant therein to be signed by a young attorney, one Samuel C. Strite, for the sole purpose of not disclosing the true facts as to who was actually repre-

senting the defendant; that these two attorneys John Wagaman and J. Lloyd Harshman (State's attorney for Washington County) filed on February 2nd, 1932, a bill of complaint for M. P. Moller, Inc., and at the same time filed an answer for the defendant, M. P. Moller Company, in the bill they appeared as attorneys of record, but in the answer they used one Samuel C. Strite; that on February 5th, 1932, they having been appointed receivers, sold the entire assets of the defendant corporation to the plaintiff, valued at about $130,000 for $5,000 cash and two notes of the plaintiff corporation amounting to about $36,000; that this action was approved by the Honorable Frank G. Wagaman, although the said receivers made no effort to obtain any other bid for the said assets and made no effort to obtain the best price therefor. They did not advertise the goods and in truth and in fact the said receivers acted solely for the benefit and in the interest of the plaintiff without regard for the interest of the defendant or the interest of the petitioners who owned 25% of the stock of the defendant, and the respondent asks that the entire proceeding in the Equity case No. 11,905 be considered in connection with this answer, and now therefore the respondent says that the Honorable Frank G. Wagaman knew of the charges made against his son and J. Lloyd Harshman and against all the others interested in the case Equity No. 11,905 and he should not have sat in judgment especially after the respondent herein who was one of the petitioners therein made a motion to have the case certified to another Court and to disqualify the said Honorable Frank G. Wagaman from sitting in the case because of interest. And now lastly the respondent says that the said Honorable Frank G. Wagaman failed to protect the respondent in a case in which the respondent was addressing the Court in that he allowed the father-in-law of his son one M. P. Moller to call the respondent a 'Liar' in open court and when the respondent called upon the said Honorable Frank G. Wagaman to cause the said M. P. Moller to apologize, refused to do further than to say that the conduct of said M. P.

324

Moller was inexcusable, yet when the respondent ask that said M. P. Moller be required to apologize or be held in contempt, the Honorable Frank G. Wagaman said that he would do neither, and now the respondent says that he does not believe that the language in his affidavit contains therein impertinent, scandalous, insulting and contemptuous language reflecting on the integrity of the Court, but that if such language can possibly be so construed he sincerely apologized and now says that he never intended the language used in his affidavit to be so construed, but merely desired to set forth facts which he is ready and willing to prove to be facts, which would support his motion to have the case set before another Judge other than the Honorable Frank G. Wagaman, and having fully answered the petition and the rule herein issued, the respondent prays that petition be denied and the rule discharged."

Testimony was taken upon the petition of the state's attorney and the said answer of the appellant in open court before his honor, Judge Sloan, and resulted in the order appealed from.

The motion and affidavit of the appellant, containing language which was held to be contemptuous, was filed in a civil cause wherein the appellant was plaintiff and Mathias P. Moller was defendant. While the record here does not set forth the declaration in that case, it is apparent that the cause of action was an alleged slander of the appellant by Mathias P. Moller, growing out of language used by Moller during the progress of the trial of an equity case in that court, No. 11905, wherein the appellant and Moller were parties, which said equity case was the basis of the appeal by this appellant in No. 73 of the present term of this court. The opinion of this court in that case fully discloses the nature and result thereof; and it is unnecessary to further enlarge upon those facts in this opinion.

The purpose alleged in the appellant's answer, in filing the motion and affidavit, was to have the slander case removed

to some other jurisdiction for trial, or to disqualify Judge Wagaman from sitting in the case. Section 109 of article 75 of the Code provides: "The parties to any cause may submit the same to the court for determination without the aid of the jury; and in all suits or actions at law, issues from the orphans' court, or from any court sitting in equity, and in all cases of presentments of indictments for offenses which are or may be punishable by death, pending in any of the courts of law in this State having jurisdiction thereof, upon suggestion in writing, under oath, of either of the parties to said proceedings, that such party cannot have a fair and impartial trial in the court in which the same may be pending, the said court shall order and direct the record of proceedings in such suit or action, issue, presentment or indictment, to be transmitted to some other court having jurisdiction in such case for trial. * * * And such right of removal shall exist upon suggestion in cases when all the judges of said court may be disqualified, under the provisions of the constitution, to sit in any such case." According to these provisions, either of the parties plaintiff or defendant in a civil suit pending in a court of law, upon suggestion and affidavit, has the absolute right to have the case removed to some other court of competent jurisdiction for trial. In such cases the court to whom the motion is addressed has no discretion as to removal, but must grant the motion. The same rule and practice is applicable where all of the judges of the court wherein suit is instituted are under constitutional disqualification. Under what facts does the Constitution declare a judge to be disqualified? These are prescribed by section 7 of article 4 of the Constitution, and section 31 of article 26 of the Code. Section 7 of article 4 of the Constitution provides: "No judge shall sit in any ·case wherein he may be interested, or where either of the parties may be connected with him by affinity or consanguinity within such degrees as now are or may hereafter be prescribed by law, or where he shall have been of counsel in the case;" and the provisions of section 31 of article 26 of the Code are: "Any judge of the court of appeals, or any judge of a cir-

cuit court, or any judge of the supreme bench of Baltimore
City, who shall be connected by consanguinity or affinity with
any party to a cause within the third degree, counting down
from a common ancestor to the more remote, shall be disqual-
ified from sitting in such cause."

Applying the test thus prescribed, we find that Judge
Wagaman was not disqualified in the slander case then pend-
ing. He had no such interest in the case as would disqualify
him under the constitutional provisions (the word "interest"
as therein employed having reference to a pecuniary interest
in the litigation or the result thereof) ; he was not connected
with either of the parties by affinity or consanguinity within
the prohibited degrees; nor had he been of counsel in the case.
There may be, and doubtless are, many circumstances in
which a delicate sense of propriety would, and probably
should, induce a judge to decline to sit in a given case and,
upon his own motion or upon motion of either of the parties,
remove the cause to another jurisdiction or request some other
judge of the same jurisdiction to preside at the trial. How-
ever, if the presiding judge, under such circumstances, re-
fuses to do this, he is within his legal rights; and his action in
that respect is not the subject of review. Where the alleged
disqualification does not amount to a constitutional or legal
disqualification, the question is left to the enlightened con-
science, delicacy of feeling, and sense of fairness possessed
by the individual judge. The long and honorable history of
the judiciary of this state impels the belief that the decision
of such questions can be safely left where the responsibility
now reposes. Judges are selected to be useful public ser-
vants, and no judge's view of the proprieties in such questions
should be carried to such an extent as would result in the seri-
ous curtailment of his usefulness as a public officer. We
have always had, and will continue to have, situations where
young men are practicing attorneys before the court pre-
sided over by their fathers; and what we have said is not to
be construed as indicating a belief on the part of this court
that justice, fairness, or delicacy of feeling should require,

or even permit, the retirement of the judge in all such cases. The interest of the litigants and the public must at all times be kept in mind as the real and substantial object to be attained. It may be that in Baltimore City, where one judge can be substituted for another without inconvenience, delay, or expense, a practice by which no judge would sit where his son was of counsel is proper; while in the counties, if such a rule were established and adhered to, it would result in one of two things, the serious curtailment of the usefulness of the court, or the prohibition of the attorney practicing before the court in the county of his residence. What is true in respect to a son might be, and doubtless is, true in respect to other close relationships, such as brothers, former law partners, or close personal friends. It may be added that in cases where the attorney's relationship to the judge is within the prohibited degrees, and where such attorney's compensation in the particular case is dependent upon its outcome, and his interest therein is therefore of a pecuniary nature, and this condition is brought to the attention of the court, the judge is legally disqualified. If the attorney represents the plaintiff and is to receive nothing for his services unless the plaintiff succeeds, whereas if he does succeed the attorney would be entitled to a proportion of the amount recovered, there can be no real and substantial distinction between such a case and one where the attorney related within the prohibited degrees is a party of record as plaintiff or defendant. In other words, it would seem that the disqualification should not be confined to parties of record, but that, in order to give force and effect to the purpose and letter of the constitutional disqualification, it should be held to apply to those cases where the interest is real, whether disclosed from the record or outside of the record. *Johnson v. State,* 87 Ark. 45, 112 S. W. 143.

Judge Wagaman not being legally disqualified, the only proper action by the appellant which could bring about a trial in another jurisdiction was a motion for removal, in which motion it is only necessary to allege that the party

desiring the removal cannot have a fair and impartial trial in that jurisdiction, and make oath thereto. Upon such suggestion and affidavit being filed in those civil cases where the law permits removal, it becomes the duty of the judge to send the case to some other jurisdiction for trial, and this without regard to the motives actuating the request for removal. Again, if the appellant in this case believed or contended that the presiding judge was under legal disqualification, it is not contempt for him to present to the court, in respectful and decorous language, the facts relied upon to support his contention. Also, if the appellant made no contention that the circumstances surrounding this case amounted to a legal disqualification of the judge, he could present those circumstances to the court as a basis for determination as to the propriety of a change of venue or the calling in of another judge; provided always that it be done in proper and respectful language and attitude, and there be no legitimate inference or implication to be drawn therefrom impugning the integrity and fairness of the court. He can call to the attention of the court facts, but must leave the inferences and conclusions to be drawn therefrom to the court. It has been said that one filing a suggestion and affidavit of removal might, as is apparent in this case, desire to avoid a trial before a particular judge, and this he could not accomplish by a removal if the judge removed the case to another jurisdiction where he still might preside. While this is true, the answer would seem to be that the primary purpose of the removal statute is to rid the trial of the influence of such community or local bias or prejudice as would manifest itself in a jury selected from that locality, because a jury's finding of fact is not the subject of review except on motion for new trial, while the rulings of the court, together with any alleged misconduct, may be reviewed and corrected on appeal. This is further indicated by equity causes, wherein the court considers the facts, and wherein there is no right of removal, but an appeal on the conclusion of facts as well as on matters of law.

Let us assume in the present case that the motion, suggestion, and affidavit for removal had been made in the usual way, and that Judge Wagaman, in the exercise of his discretion as to where it should be removed, sent the case to one of the two remaining counties in the circuit, where he was entitled to preside alone or in conjunction with other judges, and further assume that at the trial in the county to which it was removed he would be the single judge sitting. In such a situation the appellant here could submit his questions of fact to a jury of a county other than where the cause of action arose, and for that reason presumably a fair and impartial jury, from whose decision on the facts there would be no appeal. All questions occurring during the trial upon which the court would be entitled to pass, as well as any improper conduct, under proper exceptions, would be open and could be corrected on appeal. It is therefore clear that, in order to gain a removal, it was not incumbent upon the appellant in his affidavit to make the allegations therein contained. If his object was to state such facts for the consideration of the court in the exercise of its discretion in passing upon the disqualification of the judge, does the language employed and the necessary inferences and implications drawn therefrom constitute contempt?

The object of the testimony taken at the contempt hearing was to substantiate the appellant's answer, which answer was a reiteration and enlargement of the facts set forth in the affidavit of removal. The answer disclaims any contemptuous intent, but, if such language be contemptuous, an apology therefor is offered. We have no difficulty in finding that the language of the affidavit is contemptuous. It plainly asserts the belief of the affiant that Judge Wagaman aided his own son, who was counsel, in contesting the appellant's right to intervene in a previous case. The only logical inference from such language is that the judge illegally and improperly aided his son, through bias and prejudice, either against the appellant or in favor of the appellant's opponent. This was an allegation of past action by the court in a case that had been concluded, but affiant follows it up by making the same

allegations in respect to any trial to be had before that judge in the then pending case. The affidavit as a whole, directly and by necessary inference, impugns the integrity and honesty of the court, and constitutes an attack which the court could not pass without serious impairment of its dignity and standing as an instrument for the administration of justice. The contemptuous language is contained in an affidavit filed among the public records of the court, and directed to it. The court has, and must have, the inherent right and power to maintain and preserve its dignity and decorum, in order that its usefulness be preserved. *Ex parte Maulsby,* 13 Md. 625, appendix; *Kelly v. Montebello Park Co.,* 141 Md. 205, 118 A. 600; *Ex parte Sturm,* 152 Md. 114, 136 A. 312. If this or similar attacks upon the impartiality, fairness, and integrity of the court be permitted to go unpunished and unnoticed, the time will not be far distant when all respect for courts and court action will be lost, and their usefulness as a co-ordinate branch of the government most seriously impaired, if not totally destroyed.

Criminal contempts of court embrace all acts committed against the majesty of the law or the dignity of the court, and the primary and controlling object sought to be obtained by punishment of such offenders is the vindication of public authority, of which the court is the embodiment, represented at any given time by the presiding judge. *Coons v. State,* 191 Ind. 580, 134 N. E. 194, 198. A due regard for the integrity of the law and the court requires that indignities to judges on account of rulings made in court be summarily dealt with. Judges should be ever watchful of their motives and conduct in the exercise of so great a power, and never should it be allowed to serve as a medium through which to vent personal spleen or anger. As well stated in *Coons v. State, supra*: "Such discretion ought to be carefully weighed, to the end that any judge may not in wrath pervert the courts' inherent power to preserve their chaste character in the eyes of the people, for whose sole benefit the courts were organized." In *Re Burr,* 9 Wheat. 529, 530, 6 L. Ed. 152, Chief Justice Marshall recognized the power and the care

and caution with which it should be exercised, when he declared: "This discretion ought to be exercised with great moderation and judgment; but it must be exercised."

In *Cooke v. United States,* 267 U. S. 517, 45 S. Ct. 390, 391, 69 L. Ed. 767, an attorney for one of the parties signed and had delivered to the presiding judge, in chambers, the following letter:

"Dear Sir: In re No. 985, W. W. Wilkinson, Trustee, v. J. L. Walker; in re No. 986, W. W. Wilkinson, Trustee, v. Mass. Bonding Company et al.; in re 266 Equity, W. W. Wilkinson, Trustee, v. J. L .Walker; in re 69, Equity, Southwestern Telegraph & Telephone Co. v. J. L. Walker; in re No. 1001, in Bankruptcy, Walker Grain Company.

"Referring to the above matters pending in the District Court of the United States for the Northern District of Texas, at Fort Worth, I beg personally, as a lawyer interested in the cause of justice and fairness in the trial of all litigated matters, and as a friend of the judge of this court, to suggest that the only order I will consent to your honor's entering in any of the above-mentioned matters now pending in your honor's court is an order certifying your honor's disqualification on the ground of prejudice and bias to try said matters. * * *

"I do not like to take the steps necessary to enforce the foregoing disqualification, which to my mind, as a lawyer and an honest man, is apparent. Therefore, in the interest of friendship and in the interest of fairness, I suggest that the only honorable thing for your honor to do in the above-styled matters is to note your honor's disqualification, or, on your honor's qualification having been questioned, to exchange places and permit some judge in whom the defendant and counsel feel more confidence to try these particular matters. Prior to the trial of cause No. 984, which has just been concluded, I had believed that your honor was big enough and broad enough to overcome the personal prejudice against the defendant Walker, which I knew to exist, but I find that in this fond hope I was mistaken, also my client

desired the privilege of laying the whole facts before your honor in an endeavor to overcome the effect of the slanders that have been filed in your honor's court against him personally, and which have been whispered in your honor's ears against him, and in proof of which not one scintilla of evidence exists in any record ever made in your honor's court. My hopes in this respect having been rudely shattered, I am now appealing purely to your honor's dignity as a judge and sense of fairness as a man to do as in this letter requested, and please indicate to me at the earliest moment your honor's pleasure with respect to the matters herein presented, so that further steps may be avoided. With very great respect, I beg to remain, Yours most truly."

The writer of the letter was held in contempt by the District Judge to whom it was addressed and delivered. On final review by the Supreme Court, in an opinion by Chief Justice Taft, it was said: "The first objection to the sentence of the court, made on behalf of the petitioner, is that the letter written to the judge is not a contempt of the court. * * * It is said that all that the petitioner intended to do by this letter was to advise the court of the desire of his client to have another judge try the four cases yet to be heard, and of his own desire to avoid the necessity of filing an affidavit of bias under the above section in those cases by inducing the regular judge voluntarily to withdraw. Had the letter contained no more than this, we agree with the Circuit Court of Appeals that it would not have been improper. But we also agree with that court that the letter as written did more than this. * * * The letter was written and delivered pending further necessary proceedings in the very case which aroused the writer's anger. While it was doubtless intended to notify the judge that he would not be allowed to sit in the other cases, its tenor shows that it was also written to gratify the writer's desire to characterize in severe language, personally derogatory to the judge, his conduct of the pending case. Though the writer addressed the judge throughout as 'your honor,' this did not conceal, but emphasized, the personal reflection intended. The expression of disappointed hope

that the judge was big enough and broad enough to overcome his personal prejudice against petitioner's client, and that the client would have the privilege of rebutting the whispered slanders to which the judge had lent his ear, and the declaration that his confidence in the judge had been rudely shattered, were personally condemnatory and were calculated to stir the judge's resentment and anger. Considering the circumstances and the fact that the case was still before the judge, but without intending to foreclose the right of the petitioner to be heard with witnesses and argument on this issue when given an opportunity, we agree with the Circuit Court of Appeals that the letter was contemptuous."

The appellant contends that he had no intention of committing contempt, and that his denial of that intention in the answer frees him from the responsibility for his act. In such cases one must be held to intend what he does, and the language indicating that intention be construed according to its usual ordinary import. It can never be that one could be guilty of acts which constitute contempt, and subsequently relieve himself by saying that, "although it was contempt, I did not intend it." The only legitimate effect of a subsequent denial of intention, if such denial be sincere and *bona fide,* is to mitigate the punishment. 6 *R. C. L.* 534; *Merrimack River Savings Bank v. Clay Center,* 219 U. S. 527, 31 S. Ct. 295, 55 L. Ed. 320; *In re Duncan,* 83 S. C. 186, 65 S. E. 210; *In re S,* 83 N. J. Eq. 607, 91 A. 801. In 13 *C. J.* 45, sec. 61, it is said: "Disclaimer of intentional disrespect or design to embarrass the due administration of justice is no excuse, especially where the facts constituting the contempt are admitted or where the contempt is clearly apparent from the circumstances surrounding the commission of the act." In support of the statement of the text there are cited federal cases and decisions of the courts of last resort of a large number of states.

The language used in the affidavit was not pertinent, and was entirely unnecessary for the purpose of that application.

Contempt charges usually present serious and delicate questions for determination; and the case now under consideration, by reason of its attendant facts and circumstances, rather increases the delicacy of the question. The appellant's past history and present standing toward the

334

courts, being that of a disbarred attorney trying his own case in proper person, does not lessen his legal rights, which, so far as the conduct of these proceedings is concerned, the record shows to have been scrupulously preserved and protected. Upon the petition of the state's attorney being filed, an order *nisi* was passed requiring him to answer within five days after service of the order upon him, which *nisi* order was signed and all subsequent proceedings had before a different judge than the one toward whom the alleged contempt was committed. Upon the filing of the answer, the appellant was further permitted to produce whatever evidence he saw fit in support of his position, and opportunity given for full and fair presentation of his defense, after which the order adjudging him in contempt was passed. We find that the appellant was properly adjudged in contempt.

We have given much thought to the question of punishment, and have concluded that, weighing all of the circumstances surrounding this case, including the previous litigation in the same court, full justice would be done and the dignity of the court vindicated and upheld by the imposition of a fine of $100. The sentence of the lower court being confinement in the county jail of Washington County for the period of ninety days, our decision to modify that sentence necessitates a remand of the case so that sentence may be imposed and carried out in accordance with the views here expressed.

*Order affirmed, and case remanded for modification of the sentence.*