# RHEA L. COHEN *v.* STATE OF MARYLAND

[No. 11, September Term, 1973.]

*Decided September 13, 1973.*

The cause was argued before ORTH, C. J., and THOMPSON and MENCHINE, JJ.

*Stephen H. Sachs* and *Gregory L. Reed,* with whom was *Alan Jay Goldstein* on the brief, for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

The question to be decided on this appeal is whether or not Rhea L. Cohen, the appellant, was guilty of direct criminal contempt of court by reason of filing a written and oral motion that the judge disqualify himself on the grounds of bias and prejudice. We hold that she was not.

The contempt citation arose during the trial of a complaint in equity by the appellant and five others, on behalf of the property owners and taxpayers of Montgomery and Prince George's Counties, against the Maryland-National Park and Planning Commission, the Prince George's County Planning Board, and others in the Circuit Court for Prince George's County. The plaintiffs sought to prevent the use of a portion of the Commission's park land for the construction and operation of the Largo Sports Arena. The plaintiffs charged that the land had been leased by the Planning Board without due consideration of the potential detrimental effect of the Sports complex upon the environment of the Park's system; that the lease was

invalid; and, that the rental to be paid thereunder by the partnership operating the complex was far below the fair rental value of the property. Because of the importance of these questions both to the parties and to the public, the trial judge expedited the proceedings by accelerating the pretrial discovery procedures and by holding court in the evenings throughout the four-day trial. The last day of trial fell on Saturday, December 16, 1972, at which time the testimony was concluded: each side rested its case; and, closing arguments were delivered. At the conclusion of rebuttal argument on the part of the attorney for the plaintiffs, the following discourse transpired:

"The Court: Does anybody else have anything they wish to say in connection with this case before the Court takes further proceedings?

Mrs. Rhea L. Cohen (Plaintiff): Your Honor, may I be heard?

The Court: Yes, you may.

Mrs. Cohen: I should like to present to the Court my affidavit of bias and prejudice. I state that I am a plaintiff in the case and a citizen of Prince George's and I state that Judge Perry Bowen has unfairly prevented the Plaintiffs from entering into the record evidence and testimony essential to the Plaintiffs' case. He has willfully harassed the plaintiffs and has shown a lack of consideration for the welfare of the plaintiffs and their witnesses by scheduling sessions to extend into late night hours and by stating his intention to hear the case on Saturday and Sunday as well until the trial is over. And also the Judge has made an outrageous false statement in open court on December 12, 1972 that the citizens of Prince George's County have no right to referendum on certain laws for which said citizens, including the plaintiff, myself, are now circulating petitions in compliance with Section 319 of the Prince George's County Charter.

I should like to add that I feel that from the

beginning it has been quite impossible for the plaintiffs to carry on the case and to enter into the record the points they felt were most pertinent because witnesses were denied the right to testify and because material evidence was not permitted into the record. I found this unbelievable. This is a court of justice and I feel this was a travesty on the court system.

I also spoke to Judge Murphy, Chief Judge of the Maryland courts and I asked him if it is customary for hearings and trials of this sort to be carried on at late night hours and over weekends. He said over weekends it is almost unheard of — this is what he told me — and it is very rare to have such trials carried over into evening hours. I found that this was very inconveniencing but also a form of harassment to me and I feel this is a matter that should be in the record of this trial.

The Court: Madam, the Court regards your comments as a direct indication of contempt for this court.

Mr. Bailiff, you will take this woman into your custody and present her before the Court for an order."

The written affidavit filed in the proceedings read as follows:

"Affidavit of Bias and Prejudice

Comes now Rhea L. Cohen, who is a plaintiff and alleges as follows:

1. She is a citizen of Prince George's County, Maryland, residing at 10 Greendale Place, Greenbelt, Maryland;

2. Perry G. Bowen, the Judge in this case, has unfairly prevented the plaintiffs from entering into the record evidence and testimony essential to plaintiffs' case;

3. Judge Bowen has willfully harassed• the

plaintiffs and has shown a lack of consideration for the welfare of the plaintiffs and their witnesses by scheduling sessions to extend intŏ late night hours and by stating his intention to hear the case on Saturday and Sunday, as well, until the trial is over; and,

4. Judge Bowen made the outrageous and false statement in open court on December 12, 1972, that the citizens of Prince George's County have no right to referendum on certain laws for which said citizens, including the plaintiff herein, are now circulating petitions in compliance with Sec. 319 of the Prince George's County Charter.

WHEREFORE, plaintiff herein prays Perry G. Bowen, Judge of the Seventh Circuit Court of Maryland, to disqualify himself from this case.

/s/ Rhea L. Cohen

Rhea L. Cohen, Plaintiff

STATE OF MARYLAND        SS:
COUNTY OF PRINCE GEORGE'S

SWORN TO AND SUBSCRIBED before me this 15th day of December, 1972.

/s/ James J. Cassels

Notary Public

My commission expires:

1 July 1974"

The court then adjourned from 12:21 p.m. until 1:45 at which time it delivered its opinion in the proceedings, concluding at 2:50 p.m. The court recessed until 3:50 p.m. in order to frame a decree. The court then took up the question of the appellant's citation for contempt:

"The Court: Mr. Reporter, the Court directs that you prepare and type the following proceedings of the Court as the written record required by Rule P 3, proceedings where defendants are cited for direct contempt of Court.

The basis of this citation is that Mrs. Rhea L.

Cohen, one of the parties plaintiff in a case standing before this Court for trial, appeared in open court and stated in the presence of the Court on the bench the written allegations contained in a paper writing which purports to be an affidavit entitled 'Affidavit of bias and prejudice' and which states the following matters which the Court believes constitute a direct contempt of this Court: That the presiding judge 'unfairly prevented the plaintiffs from entering into the record evidence and testimony essential to plaintiffs' case,' and that he 'willfully harassed the plaintiffs,' and that he made an outrageous and false statement in open court.

Now, insofar as these remarks relate to this member of the Court personally, if that were all that were involved it would simply be passed over without further comment or any comment at all. But the position the Court takes is that this sort of conduct cannot be permitted or passed over without serious impairment to the dignity and standing of the Circuit Court for Prince George's County as a court and that to address to the Court on the bench such matters tends to bring the entire judicial system into contempt and constitutes a clear and present danger to the administration of justice.

Madam, those are the matters which the Court has against you. I now afford you an opportunity to present any matters which you wish to present relating thereto.

Mr. Gaegler: If the Court please —

The Court: Mr. Gaegler, do you enter your representation for this defendant in this case?

Mr. Gaegler: Yes, I do.

The Court: Madam Clerk, enter the appearance of Mr. Gaegler for the defendant in this proceeding.

Mr. Gaegler: Mrs. Cohen has requested of me to

ask for a trial by jury under a 1968 Supreme Court case that started out or came out of Illinois in which there were serious matters of contempt, that the defendant who is being cited for contempt would be entitled to a trial by jury and therefore she has asked me to make this request to this Honorable court.

The Court: Mr. Gaegler, I know of no authority which entitles a defendant in a direct criminal contempt proceeding to trial by jury unless the sentence the Court intends to impose exceeds six months confinement. If you have any such authority I will be glad to see it. If you do not, I assume that you agree that the Court's interpretation of the law is correct and I represent to you that I have no idea of confining Mrs. Cohen for anything in excess of six months.

Mr. Gaegler: She has shown me Title 42, Section 1983 of the Civil Rights Act, Your Honor, and —

The Court: Well, sir, I don't know of anything that makes Title 42 of the Civil Rights Act binding upon this Court.

Mr Gaegler: I am aware of that, Your Honor. We would like to —

(Mr. Gaegler and Mrs. Cohen confer.)

Mr. Gaegler: I have informed my client of what I feel is the appropriate situation. If she feels aggrieved by the decision —

The Court: I am not concerned with any information and advice you may give your client, except that I ask you if there is anything else you or your client desire to present in the instant proceeding.

Mr. Gaegler: Only in this respect, Your Honor: In the heat of a trial or in the course of carrying on the trial of causes that one feels very strongly in connection with, especially the plaintiff who has spent a good deal of time and effort and perhaps is

not wordly wise in the law or in the framework of that area in which we deal, with the efforts that she has extended in terms of gathering the names on the petitions, felt that she was sincere in her attitude that within her heart that she was entitled to the right of petition by referendum.

Of course the Court remembers — and I apologize again — the Court remembers that the decisions made in connection with the order on CB 160 and 167, or Bill 166, deal with the order of the emergency aspect of it, basically and the opinion that was addressed to the right of referendum was in addition thereto, or was prior to the time the Court had entered the order.

She felt sincere in her efforts even though she may have been wrong in that aspect of it in terms of the word 'false'. I think it is a mischoice of words or use of words. I think a better word would have been 'wrong'. I think that would have been subject to understanding by this Court, knowing the Court's attitude that reasonable men can get together and have differences of opinion and one can be wrong. And certainly this Court can be appealed.

On behalf of my client I plead to the Court to accept this in the position that it was made with understanding and ask the court to consider it in its sentence in terms of this direct summary procedure, contempt procedure.

The Court: Very well, if there are any matters you wish to present to the Court before determination is made in this case the Court now affords you an opportunity to do so.

Mrs. Cohen: No, thank you.

The Court: Very well, Madam Clerk, you will mark this paper writing entitled 'Affidavit of Bias and Prejudice' as Exhibit 1 to the transcript of this proceeding, it being the document which was

offered for filing in open court by the defendant in this case in proper person.

The Court takes the position in this matter, as the preceding remarks have indicated, that the actions of this defendant constituted a direct contempt of this Court. As a Court, we find the defendant guilty of that. We have afforded her an opportunity to be heard and an opportunity for counsel to be heard, and while we concede that everything he says may be true and in fact do believe it to be true, while that may go to mitigation of the punishment to be imposed it does not excuse nor justify the contemptuous actions.

Under the circumstances, the Court directs that this defendant purge herself of the contempt committed by paying a fine of $500 and standing committed to the County Jail for three months.

Mr. Sheriff, she is in your custody."

Appellant argues that, in the absence of anything in the record showing that the remarks were delivered in an improper manner, including her tone of voice and demeanor, the words were not contemptuous because her actions: (1) did not constitute misbehavior; (2) did not result in an obstruction of the judicial process; and, (3) were not made with an intention to commit an impropriety.[1] She cites a number of recent Maryland cases to support her argument.[2] To answer the argument that the actions did not amount to

1. Relying on *Mayberry v. Pennsylvania*, 400 U. S. 455, 91 S. Ct. 499, 27 L.Ed.2d 532 (1971); *Ungar v. Sarafite*, 376 U. S. 575, 84 S. Ct. 841, 11 L.Ed.2d 921 (1964); and *United States v. Meyer*, 462 F. 2d 827 (D.C. Cir. 1972). Appellant also attacks the summary procedure. The State replies that the procedures were proper under Md. Rule P3, *Kandel v. State, infra* and *State v. Roll and Scholl, infra*. We do not reach this question.

2. *Tyler v. Baltimore County*, 256 Md. 64, 259 A. 2d 307 (1969); *Marzullo v. Korens Furniture Co. of Baltimore City*, 253 Md. 274, 252 A. 2d 822 (1969); *Kandel v. State*, 252 Md. 668, 250 A. 2d 853 (1969); *Costello v. State*, 237 Md. 464, 206 A. 2d 812 (1965); *Sheets v. City of Hagerstown*, 204 Md. 113, 102 A. 2d 734 (1954); *Board of Medical Examiners v. Steward*, 203 Md. 574, 102 A. 2d 248 (1954). *Roll & Scholl v. State*, 15 Md. App. 31, 288 A. 2d 605 (1972), *modified & remanded*, 267 Md. 714, 298 A. 2d 867 (1973); *Muskus v. State*, 14 Md. App. 348, 286 A. 2d 783 (1972); *Goldsborough v. State*, 12 Md. App. 346, 278 A. 2d 623 (1971).

contempt, the State relies on *Ex parte Bowles,* 164 Md. 318, 165 A. 169 (1933). In that case the plaintiff filed a motion and affidavit designed to have the case removed to another jurisdiction for trial or to disqualify the presiding judge. It was alleged: that the defendant in the action was the father-in-law of the son of the presiding judge; that the son of the presiding judge would appear as attorney for the defendant; that at the previous trial between the same parties the presiding judge had stated that Bowles had taken action for an ulterior motive; that Bowles believed the presiding judge had aided his son in contesting Bowles' right to intervene; and, lastly, that it was his belief that he could not obtain a fair trial in any matter in which the parties related to the presiding judge were interested. The court reviewed the law and found that there was no basis for the removal under Maryland law and that the judge was not legally disqualified, saying:

> "Under what facts does the Constitution declare a judge to be disqualified? These are prescribed by section 7 of article 4 of the Constitution, and section 31 of article 26 of the Code. Section 7 of article 4 of the Constitution provides: 'No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him by affinity or consanguinity within such degrees as now are or may hereafter be prescribed by law, or where he shall have been of counsel in the case;' and the provisions of section 31 of article 26 of the Code are: 'Any judge of the court of appeals, or any judge of a circuit court, or any judge of the supreme bench of Baltimore City, who shall be connected by consanguinity or affinity with any party to a cause within the third degree, counting down from a common ancestor to the more remote, shall be disqualified from sitting in such cause.'
>
> "Applying the test thus prescribed, we find that Judge Wagaman was not disqualified in the slander case then pending. He had no such interest in the

> case as would disqualify him under the constitutional provisions (the word 'interest' as therein employed having reference to a pecuniary interest in the litigation or the result thereof); he was not connected with either of the parties by affinity or consanguinity within the prohibited degrees; nor had he been of counsel in the case." *Id.* at 325-26.

The court then found the affiant's contempt citation proper saying:

> "We have no difficulty in finding that the language of the affidavit is contemptuous. It plainly asserts the belief of the affiant that Judge Wagaman aided his own son, who was counsel, in contesting the appellant's right to intervene in a previous case. The only logical inference from such language is that the judge illegally and improperly aided his son, through bias and prejudice, either against the appellant or in favor of the appellant's opponent. This was an allegation of past action by the court in a case that had been concluded, but affiant follows it up by making the same allegations in respect to any trial to be had before that judge in the then pending case. The affidavit as a whole, directly and by necessary inference, impugns the integrity and honesty of the court, and constitutes an attack which the court could not pass without serious impairment of its dignity and standing as an instrument for the administration of justice. The contemptuous language is contained in an affidavit filed among the public records of the court, and directed to it. The court has, and must have, the inherent right and power to maintain and preserve its dignity and decorum, in order that its usefulness be preserved. *Ex parte Maulsby*, 13 Md. 625, appendix; *Kelly v. Montebello Park Co.*, 141 Md. 205, 118 A. 600; *Ex parte Sturm*, 152 Md. 114, 136 A. 312. If this or similar attacks upon the

impartiality, fairness, and integrity of the court be permitted to go unpunished and unnoticed, the time will not be far distant when all respect for courts and court action will be lost, and their usefulness as a co-ordinate branch of the government most seriously impaired, if not totally destroyed.

"Criminal contempts of court embrace all acts committed against the majesty of the law or the dignity of the court, and the primary and controlling object sought to be obtained by punishment of such offenders is the vindication of public authority, of which the court is the embodiment, represented at any given time by the presiding judge. *Coons v. State;* 191 Ind. 580, 134 N. E. 194, 198. A due regard for the integrity of the law and the court requires that indignities to judges on account of rulings made in court be summarily dealt with. Judges should be ever watchful of their motives and conduct in the exercise of so great a power, and never should it be allowed to serve as a medium through which to vent personal spleen or anger." [3] *Id.* at 329-30.

Despite its age, we would find *Ex parte Bowles* to be dispositive of this case except that, in our view, two recent pronouncements by the Supreme Court of the United States require that we hold to the contrary. That Court, upon due process grounds, reversed state court adjudications of contempt, where there was a *bona fide* motion by one of the parties that the trial judge disqualify himself on the basis of bias and prejudice.

In the first of these cases, *Holt v. Virginia,* 381 U. S. 131, 85 S. Ct. 1375, 14 L.Ed.2d 290 (1965), a few quotations will show how closely the factual situation in that case mirrors that of the instant case. The motion to disqualify contained the following language:

---

**3.** The court's statement of the law at the time seems to have been in accordance with the great weight of authority. 17 Am. Jur. 2d *Contempt* § 27 (1964), 17 C.J.S. *Contempt* § 28 (1963).

"3. That the said Judge Carlton E. Holladay, who presided as Judge in said libel suit, and who fails and refuses to disqualify himself as Judge in the pending trial of the Defendant, E. A. Dawley, Jr., has, with respect to said contempt action and is now in effect and/or in fact acting as police officer, chief prosecution witness, adverse witness for the defense, grand jury, chief prosecutor and judge.

"4. That in addition to the foregoing, said Judge Carlton E. Holladay did intimidate and harass and is intimidating and harassing the lawyer representing said E. A. Dawley, Jr., viz, Leonard W. Holt, Esq., the effect of which is to seriously hamper the efforts of said Leonard W. Holt in defending the said E. A. Dawley, Jr.; that said harassment and intimidation arises out of and is connected solely with said Leonard W. Holt's participating in the defense of said E. A. Dawley, Jr. in the contempt action; that part of said harassment and intimidation occurred at a hearing of this contempt action in the Hopewell Circuit Court on January 8, 1962, at which hearing the said Carlton E. Holladay revealed that he had been making an independent investigation and inquiry of Mr. Holt's conduct in this contempt defense, and said Judge at said place and time made the statement that he would 'deal with' said Leonard W. Holt after he, the judge, had dealt with said E. A. Dawley, Jr." *Id.* at 133.

The Court held that the due process right to be heard necessarily embodies a right to file and plead essential issues:

"It is not charged that petitioners here disobeyed any valid court order, talked loudly, acted boisterously, or attempted to prevent the judge or any other officer of the court from carrying on his court duties. Their convictions rest on nothing whatever except allegations made in motions for

98

change of venue and disqualification of Judge
Holladay because of alleged bias on his part. * * *
And since '[a] fair trial in a fair tribunal is a basic
requirement of due process,' *In re Murchison*, 349
U. S. 133, 136, 75 S. Ct. 623, 625, 99 L. Ed. 942, it
necessarily follows that motions for change of
venue to escape a biased tribunal raise
constitutional issues both relevant and essential.
Cf. *Irvin v. Dowd*, 366 U. S. 717, 722, 81 S. Ct. 1639,
1642, 6 L.Ed.2d 751; *Tumey v. State of Ohio*, 273 U.
S. 510, 47 S. Ct. 437, 71 L. Ed. 749. Consequently,
neither Dawley nor his counsel could consistently
with due process be convicted for contempt for
filing these motions unless it might be thought that
there is something about the language used which
would justify the conviction.

"As previously stated, the words used in the
motions were plain English, in no way offensive in
themselves, and *wholly appropriate to charge bias*
in the community and bias of the presiding judge.
The Supreme Court of Appeals of Virginia
considered the motion for change of venue 'a vehicle
to heap insults upon the court, a studied attempt to
smear the judge.' 205 Va. at 338, 136 S.E.2d at 814.
But if the charges were 'insulting' it was inherent
in the issue of bias raised, an issue which we have
seen *had to be raised*, according to the charges, *to
escape the probability of a constitutionally unfair
trial.*"(Emphasis added.) *Id.* at 136-37.

In the second case, *In re Little*, 404 U. S. 553, 92 S. Ct. 659,
30 L.Ed.2d 708 (1972), the Court held that *Holt* necessarily
required reversal of the contempt convictions under the
following conditions (the exact language used in the motion
not being set out):

"Petitioner appeared and filed a written motion for
continuance by reason of another trial engagement
of his retained counsel in Charlotte. The trial judge
denied the motion and proceeded with the trial.

Without benefit of counsel petitioner attempted to defend himself. In summation following the close of the evidence petitioner made statements that the court was biased and had prejudged the case and that petitioner was a political prisoner." *Id.* at 554.

In its brief, the State attempts to distinguish *Holt* on the basis that in *Holt* the motion for disqualification was filed prior to trial. We are unable to follow the distinction where the motion was based upon the handling of the case after the trial began. In any event, the holding in *Little* destroys the State's contention. It will be observed that in that case the argument of the appellant in proper person was given not in a pretrial motion but rather it was delivered in summation. This is not to say that such motions can be made frivolously without good faith. Two recent cases distinguishing *Holt* have drawn this distinction, *Spencer v. Dixon*, 290 F. Supp. 531 (W.D. La. 1968); *Ciraolo v. Madigan*, 443 F. 2d 314 (9th Cir. 1971). The facts of the instant case evidence: that appellant made a good faith motion for disqualification; that the manner of delivery was not improper; and, that the language was not sufficient to constitute an "imminent threat to the administration of justice." Consequently, we agree with the appellant's argument that the contempt conviction cannot withstand constitutional scrutiny.

> *Order of contempt dated December 16, 1972 reversed.*
> *Costs to be paid by Prince George's County.*