ROBERT MADDOX ET AL. *v.* NATALIE MADDOX
[No. 27, April Term, 1938.]

*Decided May 19th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Sol. C. Berenholtz,* for the appellants.

*J. Calvin Carney,* for the appellee.

PARKE, J., delivered the opinion of the Court.

On September 18th, 1933, Natalie Maddox filed in the Circuit Court No. 2 of Baltimore City a bill for permanent alimony against her husband, Robert Maddox. She charged her husband with cruelty, desertion, and adultery. The wife asked to be awarded the custody of their two girl children, then six and two years of age. The husband answered the bill of complaint and denied the facts upon which the wife based her equity to alimony and the custody of the two infants. He asserted his wife was morally unfit to have the custody of the children. The answer of the husband was accompanied by his cross-bill for a divorce *a vinculo matrimonii.* The parties took testimony in support of their respective bills of complaint. The chancellor, on December 4th, 1933, dismissed both bills of complaint; and awarded the custody

of the two infant children to their paternal grandmother, with leave to the mother to see the children at all reasonable times. In dismissing both bills of complaint, the court retained jurisdiction of the custody of the two infants.

On May 14th, 1934, the mother of the infants filed a petition for the purpose of obtaining the custody and care of the infants. The father answered and again asserted that she was unfit. After testimony and hearing, the petition of the mother was denied by the chancellor. The mother renewed this application on September 30th, 1936. The petition was answered separately by the father and grandmother, who resisted the application on the alleged ground that the children had a suitable home and that the mother was not a proper person to have the infants. Again, testimony was taken by the litigants, and, after hearing, the mother was a second time refused the care and custody of the children, and that of the grandmother continued, but the decree of the court was modified so as to permit the mother to have the infants every Sunday and Wednesday for designated periods, but it was provided that the children were not to be taken by the mother out of the City of Baltimore without the specific written authority of the court. The decree was passed on March 29th, 1937; and, on the following April 21st the mother reported to the chancellor that the grandmother had refused to let her have the children as commanded and prayed that she be adjudged in contempt. The answer of the grandmother was promptly made. It denied the accusations. The court did not act on these proceedings until November 22nd, 1937, when the parties, with their counsel, appeared before the chancellor, who, after hearing statements of counsel for the parties in behalf of their respective clients and examining the record, which disclosed the frequency of hearings caused by the controversies between the parties with reference to the children, announced from the bench that the order of March 29th, 1937, with respect to the mother's right to have the children, must be obeyed in good faith by

the grandmother between the hours on the days named; and that, if the order were not obeyed by the grandmother, he would end her custody of the children. The chancellor then suspended the hearing for further developments.

On December 1st, the mother filed a petition in the cause in which she represented that on Wednesday, November 24th, and again on Sunday, November 28th, she had called at the home of the grandmother to get the temporary custody of her children as provided by the order of March 29th, 1937, but that the grandmother had deliberately failed and refused to let her have the children. For the alleged disobedience of the court's order, the mother prayed that the grandmother be adjudged in contempt, and that the children be placed in a home where they will be free of "the improper and unfavorable influence of Ida Maddox," the grandmother, or that their custody be awarded to the mother and that the father be charged with their support and maintenance. The chancellor passed an order requiring the grandmother to show cause why she should not be adjudged in contempt. The answer denied the charges upon which the alleged contempt was based; and set up in detail the circumstances of the visits of the mother from the standpoint of the respondent. If believed, the facts of the answer constituted a complete exoneration of the grandmother. The issues of fact thus raised were later the occasion of the taking of testimony in open court before the chancellor. At this hearing, on December 3rd, 1937, the parties were permitted to offer witnesses in support of their respective contentions. The testimony showed that both on the first Wednesday and Sunday following the adjourned hearing before the chancellor, but not on the second Wednesday, the mother went with a woman friend to the home of the grandmother, and left on both occasions without the two children. According to the mother's own testimony, the grandmother told the children they were not obliged to go, and so frightened the children with alarming asser-

tions of what the mother would do to them that they were afraid to go away with the mother. She, also, stated circumstances which tended to establish that the grandmother had prevented the children from going. The woman who accompanied the mother was a witness, and failed in important particulars to support the testimony of the mother. The effect of the testimony of this witness is that the children were there and had been prepared to go, but were themselves unwilling, and that, while the grandmother did nothing to prevent the children from going, she did not urge them to accompany the mother. On the other hand, the testimony of the grandmother is that she got the children ready to go with their mother, and urged them to go, but the children refused. Her testimony is sharply in conflict with that of the mother, but does not gravely differ from that of the witness who was with the mother on the occasion of her last two visits. In addition, the testimony of the grandmother is corroborated by other witnesses, whose testimony, however, was confined, by reason of their limited knowledge, to certain aspects of the case.

The two girls are about eleven and seven years of age, and their insubordinate refusal to go with their mother was due, in the opinion of the chancellor, to a failure on the part of the father and grandmother loyally to conform to the court's order by exerting their authority properly and sufficiently in exacting and securing obedience of the children with reference to the mother's enjoyment of the occasional care and society of her children. A refusal to obey the order of the court, or a satisfactorily proved subtle defeat of its mandate, is a contempt. The chancellor was convinced of the grandmother's guilt, but, under the circumstances, was unwilling to visit upon her devoted head the appropriate punishment for her recalcitrancy. The court, however, concluded that it could not tolerate either disobedience to its orders or the multiplication, at brief intervals, of petitions affecting the custody of the infants under practically similar conditions. So, to put an end at once to

the litigation on the score of custody and to prevent questions of contempt, the chancellor determined to place the infants in custody of an institution, at the expense of the father, so that, in this neutral care, the privilege of the mother, the father, and the grandmother to see the children would be enjoyed without friction and embarrassment. In execution of this decision, the court's decree was accordingly passed. By it the children were placed in the custody and guardianship of a qualified institution; the father was charged with the payment of ten dollars a week to the institution towards the support of the children; the mother was given the right to see the children and have them with her on Wednesday and Sunday at stated periods of the days; the father, on compliance with the terms of the order, was given the right to see and have the children with him at such times as may be fixed by the court upon application; and all to be subject to the further order of the court. From this modification of the last preceding order of the court in this matter, the appeal is taken from the decree, but no objection is raised to the provisions reserving to the father and mother the privilege of seeing and having the children.

In his oral opinion in this matter, the chancellor clearly expresses his judgment that the circumstances do not admit of a satisfactory disposition. It is evident from the record that it is difficult to see what solution should prevail, but the best interest of the infants must be the controlling factor of the problem. Every other consideration must yield to what makes for the welfare of the children. *Infra.*

From their early and helpless infancy the two children were given succor by the grandmother, a widow. With her they found and are assured a comfortable and secure home with affectionate care under suitable domestic surroundings. With their grandmother and their father they have a home in a sense which no institution may supply. To take them from such surroundings and destroy their home life for institutional upbringing be-

cause of the grandmother's failure fully to co-operate in an order of the court bestowing upon the mother the temporary custody of the children for a large portion of two days of every week would seem to be unwise so far as the children are concerned, particularly when no compensatory advantage is to be found in the association of the two girls with their mother.

In their tenderest years, when the mother is normally preferred, the court declined on this record to give the care and custody to the mother, nor has it ever appeared, nor does it now seem, that the mother is a suitable person to have the rearing and custody of the children. While the court usually does not deny to a parent the opportunity to visit the child, and occasionally to have temporary custody at suitable times, nevertheless even this comfort may be denied the parent, if the best interest of the child is subserved. *McCann v. McCann,* 167 Md. 167, 171, 172, 173 A. 7; *Kartman v. Kartman,* 163 Md. 19, 22, 161 A. 269; *Barnard v. Godfrey,* 157 Md. 264, 271, 145 A. 614; *Schneider v. Hasson,* 161 Md. 547, 551, 157 A. 739; *Carter v. Carter,* 156 Md. 500, 506, 507, 144 A. 490; *Pangle v. Pangle,* 134 Md. 166, 170, 106 A. 337.

The testimony of the grandmother is not denied that for a year preceding the hearing on December 3rd, 1937, the mother had not visited the children a dozen times. The grandmother testified that after the order of March 29th, 1937, she had both of the children at home and ready for their mother on every Wednesday and Sunday. The effect upon the children of the mother's failure to come was not conducive to improving the filial affection of the children, nor was it fair to the grandmother. The result here serves to illustrate that such rigidity of regulation may contribute to defeat its purpose by its inflexibility, and should not be resorted to except by a necessity which is, of course, usually within the sound judgment of the chancellor on the particular facts of every case. If the relation of parent and child is not founded in affection, that natural bond is seldom created by an enforced and timed disciplinary companion-

ship. Nor is it wise to impair the authority and control of the custodian by dividing it with a parent whose place has been taken by the custodian. It would seem that the control of the children should be with the grandmother, with the privilege to the mother of reasonable access to her children as she and the grandmother shall arrange from time to time, according to their convenience, or as the court may prescribe, if necessary. *McCann v. McCann*, 167 Md. 167, 171, 172, 173 A. 7.

On the facts of the record the court's view is that the welfare of the infants is best promoted by the continued care and custody of the grandmother. By several decisions in the cause at bar the custody and control of the infants have been awarded to the grandmother. Her capacity and fitness have thus been adjudged. She took the infants in their tender age, and has had them in her care for five years. She has provided them with a decent and comfortable home and maintenance in a respectable neighborhood, and bestowed upon them adequate care and an affectionate upbringing. She is a widow, and her son, the father of the children, lives in her home. From every viewpoint the children enjoy with her advantages which transcend those of an institution for the benefit of infants. So, the continuation of the custody of the grandmother, whether viewed in relation to the happiness, training, development, and morals of the infants, is of first and paramount importance for the welfare of the infants; and renders of subordinate interest the access of the mother. The only matter in which the conduct of the grandmother has been brought in question is the controversy in reference to the access of the mother to the children. Unquestionably the orders of the court passed in this connection must be obeyed and enforced. Whatever information may have been laid before the chancellor in reports and proceedings which do not appear on the record at bar, the appellate court must confine its review within the limits of the record. In the view here taken of the testimony, it does not satisfactorily appear that the petitioner has successfully met

the burden of proof to establish her allegation that the grandmother declined to obey the order of court with reference to the access of the mother to her children. In any event, the alleged contumacy was disavowed, and the testimony in conflict with that on the part of the grandmother is not sufficiently weighty to establish a ground for her removal.

It follows from what has been said that the decree of December 9th, 1937, was improvidently passed, and must be reversed, and the cause remanded for the passage of a decree in conformity with this opinion, and, with reference to the custody and control of the infants, subject to the further order of the chancellor in the premises.

> *Decree reversed, with costs to the appellants, and cause remanded for further proceedings in accordance with this opinion.*