# GEORGE J. GOLDSBOROUGH, JR. *v.* STATE OF MARYLAND

[No. 544, September Term, 1970.]

*Decided June 24, 1971.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH and POWERS, JJ.

*George J. Goldsborough, Jr.,* for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *John C. North, II, State's Attorney for Talbot County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

George J. Goldsborough, Jr., of the Maryland Bar, appeals from an order of Judge Harry E. Clark of the Circuit Court for Talbot County summarily finding him in direct criminal contempt of court for having, in the course of an opening statement to the jury in the criminal case of *State v. Cole* made reference to an earlier acquittal of a co-defendant by another jury in the same jurisdiction in the companion case of *State v. Schwaninger,* which involved identical facts.

The pertinent background facts as disclosed by the record are these: As a result of an undercover investigation by the Maryland State Police, eight persons were arrested on January 13, 1970 and charged with unlawful possession of marihuana. They had been to a party at a

private home; unknown to them, two undercover police agents were also present. One of the guests at the party —Charles Eveland—lighted a marihuana cigarette and thereafter circulated it among the other guests. One of the persons who smoked it was Diane Schwaninger; another was Francis Cole, Jr.

Diane Schwaninger was tried for unlawful possession of marihuana before a jury in the Circuit Court for Talbot County on June 16, 1970. Appellant Goldsborough defended her, and she was acquitted. Cole, also represented by Goldsborough, was next to be tried. In July, 1970, the State's Attorney applied to the court for an order excluding all *Schwaninger* jurors from sitting as jurors in the *Cole* case. The court indicated that it would grant the State's request, and Goldsborough's co-counsel was so informed at that time.

The *Cole* case came on for trial on August 27, 1970, at which time Goldsborough presented a written motion to the court in chambers to dismiss the indictment against Cole or stay the proceedings on the ground that by excluding all *Schwaninger* jurors from the jury panel in the *Cole* case, the court had violated the Maryland statutes pertaining to random jury selection and had in effect given the State an additional twelve peremptory challenges in excess of those permitted by Maryland Rule 746. Rejecting the motion, the court said:

> "* * * The twelve jurors that were excluded from the panel were excused because they sat in a case where the facts were exactly the same as those in the case now pending before the Court. It was felt by the Court that it would be a great injustice to have these jurors sit in this case, in fact, an exercise in futility, for they would be almost honor bound to return a verdict of acquittal and, had the verdict of these twelve jurors been guilty, we would have accorded the defense the same right excluding them."

The case then went to trial before the jury and the prosecutor made a brief opening statement outlining the facts which he expected to prove. He told the jury, among other things, that Charles Eveland, though not charged in the case, had lighted a marihuana cigarette and that Cole had smoked it.

The appellant then made his opening statement on Cole's behalf. He told the jury that the evidence would show that Cole had been invited to the party by an undercover police agent to watch television, no mention being made of marihuana; that once at the party, Eveland unexpectedly produced a marihuana cigarette which each person smoked, including the two police informers; and that Eveland had in fact been charged in the case and was the guilty party. Appellant told the jury that "today's case only involves one of the persons at the party, as an earlier case involved another party, and that subsequent cases will involve some of the rest of the party"; that Cole's action in smoking the cigarette did not constitute the unlawful possession of marihuana; that the jury, as judges of law and fact, must be prepared to decide the legal question "whether this transient circulating of a cigarette, this puff and pass transaction, constitutes possession as it is defined in the law." Goldsborough concluded by saying that the defense would ask the jury:

> "* * * to return a judgment of acquittal as to the defendant, *as has already occurred in a previous case.*" (Emphasis supplied.)

The prosecutor promptly objected, claiming that the reference to the prior acquittal was grossly improper. The court agreed and stated that it constituted grounds for a mistrial. The prosecutor then moved for a mistrial. The court responded:

> "Your motion is granted. Stand up, Mr. Goldsborough. I hold you in contempt and summarily fine you $500.00, or stand committed until the fine is paid."

Thereafter, the court filed its order and opinion as required by Maryland Rule P3 b. In it, the court gave a detailed recital of the facts, as heretofore set forth, and concluded that Goldsborough had made a "wilful, intentional and deliberate effort * * * to subvert the Court's efforts to assure the State a fair, impartial and unprejudiced trial and was an open defiance of the Court's previous ruling," (denying Goldsborough's motion to dismiss the indictment or stay the proceedings for improper jury composition). "In other words," the court said, "Mr. Goldsborough, having been foiled in his attempt to pack the jury with jurors biased in favor of his client because of their acquittal of another subject under facts identical to those in the *Cole* case, was attempting to accomplish the same purpose by indicating to the *Cole* jury that in a previous case involving the same facts the jury had acquitted another guest at said party." The court said that in holding appellant in contempt "on account of the above quoted statement to the jury," it was mindful of *Maddox v. Maddox,* 174 Md. 470, where the court said "that the subtle defeat of an order of court is a contempt." The court further held that "by causing a mistrial, he [appellant] succeeded in thwarting at least temporarily the proper administration of justice and caused this County substantial unnecessary expense."

Afforded an opportunity by the court to show cause, if he could, why the contempt conviction should not stand, appellant filed an affidavit of defense in which he stated that he had not "knowingly" done anything "which would reflect upon the court, interfere with the orderly process of the trial, or subvert justice." He explained that he looked upon the *Schwaninger* jurors not as committed, but rather as enlightened jurors; that he felt the systematic exclusion of the *Schwaninger* jurors violated the statute but that once the court denied his motion, the point was preserved for appeal and was then forgotten. Goldsborough explained: "No thought was given nor any conscious attempt made to subvert, subtly or otherwise, to defeat an order of the Court." He stated that he was

not aware that the court "regarded its ruling on the challenge to the array to carry any implicit instructions with respect to the disposition of a prior case as opposed to the constitution of the present jury," but thought the reasoning underlying the ruling involved only the matter of the disqualification of the *Schwaninger* jurors who the court said "would be almost honor bound to return a verdict of acquittal." In his affidavit, Goldsborough claimed that his opening statement was spontaneous and extemporaneous; that because the prosecutor in his opening statement may have left the impression with the jury that Cole was the only person charged, it was necessary to dispel this thought and indicate that others, including Eveland, whose degree of culpability was greater, had been charged; that he had discussed with his co-counsel the propriety of referring to the acquittal in the *Schwaninger* case and concluded that no case held such a reference to be improper; that because he intended to bring in all persons who had been at the party, including Schwaninger, he regarded it as inevitable that the fact of the earlier acquittal would come out in the evidence and, therefore, that it would be appropriate to preview it in the opening statement. He reasoned further that because there had been newspaper publicity showing the results of the marihuana prosecutions, it would be naive to assume that the jury was not knowledgeable, presumably about the prior acquittal. Goldsborough concluded his affidavit by emphasizing that he had given no conscious thought to the court's earlier ruling on his pretrial motion to dismiss when he made the statement concerning the previous acquittal; and that he believed that because consistency in jury verdicts was the "hallmark of justice," the *Schwaninger* acquittal compelled acquittal in the *Cole* case.

The court thereafter filed another opinion and final order. It found no reason in appellant's affidavit of defense justifying a change in its verdict finding him guilty of contempt, although it did reduce the amount of the fine imposed. The court said that whether it was right

or wrong in excluding the *Schwaninger* jurors was not material; that any line of questioning at the *Cole* trial concerning the disposition of the *Schwaninger* case would have been highly improper; that the reference to Eveland in the prosecutor's opening statement did not justify Goldsborough from saying more than that Eveland had been charged, that he was the real culprit, and was himself awaiting trial. The court concluded that Goldsborough believed that "he was adroit enough to get by with the prejudicial statement without provoking more than a mild reproof from the Court, which would not erase from the minds of the jurors the prejudice this statement would have created in favor of his client and therefore would be a small price to pay for the advantage he would have gained." The court further concluded:

> "* * * Mr. Goldsborough knew only too well how deeply committed this member of the Court was to the proposition, whether rightly or wrongly, that under no circumstances should the *Cole* jury be apprised of the fact that a previous Talbot County jury had acquitted a member of the so-called pot party on exactly the same facts as were to be presented in the *Cole* case. Yet, knowing that, and having that knowledge reaffirmed by the Court's denial of his said Motion only a few minutes before the trial, he still dared to subvert the Court's efforts to impanel a jury that would be free of such prejudicial knowledge by telling them in his opening statement that that is what had happened."

On appeal, Goldsborough contends that the only possible ground upon which the court could have based its finding of contempt was that in some manner he violated its order or command. He claims that he had no notice that the court believed its order denying his motion to dismiss the indictment for improper jury composition constituted an order that he not mention the prior

*Schwaninger* acquittal in argument to the *Cole* jury. He claims that to constitute a contempt of court, there must be an obstruction to the performance of judicial duty resulting from acts done to hinder, prevent, or interfere with the administration of justice so as to defeat or impede its progress. He claims that intent is a necessary element of the offense of contempt of court, and that actions taken by counsel during the course of trial under a mistaken view of the law do not constitute a contempt.

The State takes a more simplistic view of the case. It urges that the impropriety of any reference to the *Schwaninger* trial was clearly implicit in the court's order overruling the pretrial motion in the *Cole* case and that, consequently, Goldsborough's reference to the prior acquittal amounted either to an outright refusal to obey the court's order or to a subtle defeat of its mandate. The State goes further and claims that the court could have found that the reference to the prior acquittal was improper without regard to its previous ruling and, without more, could have held Goldsborough in contempt on the theory that the remark was not the result of an innocent error in judgment.

Chapter 450 of the Acts of 1853, now codified (as amended) as Maryland Code, Article 26, Section 4, provides that "[t]he power of the several courts of the State to * * * inflict summary punishments for contempt of courts shall not be construed to extend to any cases except:

"(1) The misbehavior of any person or persons in the presence of the said courts, or so near thereto as to obstruct the administration of justice;

(2) the misbehavior of any officers of the said courts in their official transactions;

(3) the disobedience or resistance by any officer of the said courts, party, juror, witness or any other person or persons to

any lawful writ, process, order, rule, decree or command of the said courts; * * *." [1]

In *Ex Parte Maulsby,* 13 Md. 625 (1859), it was held that a contempt is an offense at common law against the court as an organ of public justice; that the offense was not created by the Act of 1853, and that the right to punish for contempts by summary conviction is inherent in all courts of justice and is essential for their protection and existence. The court said that jurisdiction to punish for contempt was not alone conferred by the Act of 1853; that the Act was "merely declaratory of what shall constitute a contempt"; and that while the Act "is intended to restrain the courts from punishing, as a contempt, anything which does not fall within the terms of the Act, it necessarily devolves upon each court which is called on to enforce it, the power and the duty of construing it." At pages 635-636. The court expressly rejected the argument that by reason of the Act of 1853, the courts exercise only a special and limited jurisdiction to punish for contempt. The court also expressly rejected the argument that "unless the ground of a judgment of contempt appear upon its face, and show affirmatively, that the facts upon which it is based are within the Act of 1853, the judgment is void."

The principle that the judicial power of Maryland courts to punish for contempt did not emanate from the Act of 1853 has been reaffirmed. *Hitzelberger v. State, supra; Ex Parte Bowles,* 164 Md. 318; *Ex Parte Sturm,* 152 Md. 114; *Kelly v. Montebello Park Co.,* 141 Md. 194. Specifically, in *Sturm,* the court said in echoing *Maulsby* that the power to punish for contempt "is a common law power possessed, independently of statute, by our courts of constitutional origin." At 120. "It is essential to the integrity and independence of judicial tribunals," the *Sturm* court said, "that they should have the power to

---

1. The statute is confined to direct contempts of court. *Hitzelberger v. State,* 173 Md. 435.

enforce their own judgment as to what conduct is incompatible with the proper and orderly course of their procedure." At 121. In *Bowles* the court, in discussing the breadth of the contempt power, stated that it embraces "all acts committed against the majesty of the law or the dignity of the court, and the primary and controlling object sought to be obtained by punishment of such offenders is the vindication of public authority, of which the court is the embodiment. * * *"

In a narrow sense, a contempt has been defined as a despising of the authority, justice, or dignity of the court; in a more general sense, a person whose conduct tends to bring the authority and administration of the law into disrespect or disregard, interferes with or prejudices parties or their witnesses during litigation, or otherwise tends to impede, embarrass, or obstruct the court in the discharge of its duties, has committed a contempt. 3 Wharton's Criminal Law and Procedure (Anderson Edition) Section 1329. The Maryland cases on contempt may generally be grouped into several areas: (a) contempt by attorney or advocate, *Kandel v. State,* 252 Md. 668 (failure to appear in court on time) ; *Ex Parte Bowles, supra* (improper language) ; (b) improper publicity, *Grohman v. State,* 258 Md. 552; *Baltimore Radio Show, Inc. v. State,* 193 Md. 300; *In Re Lee,* 170 Md. 43; *Ex Parte Sturm, supra;* (c) violation of orders not to construct or maintain; *Sheets v. City of Hagerstown,* 204 Md. 113; *Kelly v. Montebello Park Co., supra; Mattingly v. Houston,* 252 Md. 590; (d) failure to appear or produce records, *Weaver v. State,* 244 Md. 640; *Ex Parte General News Bureau,* 162 Md. 643; *Ex Parte Maulsby, supra;* (e) exercise of improper influence upon administration of justice; *Freedman v. State,* 176 Md. 511; *Hitzelberger v. State, supra;* (f) failure to obey other court orders, *Donner v. Calvert Distillers Corp.,* 196 Md. 475 (liquor resale) ; *Maddox v. Maddox, supra* (child custody) ; *Sellman v. Sellman,* 238 Md. 615 (alimony) ; *McMillan v. State,* 258 Md. 147 (reversal of lower court contempt citation based upon appellant's re-

fusal to remove his hat in court) ; *Gardner v. State,* 10 Md. App. 691 (witness's refusal at trial to answer question).

Without question, the refusal to obey an order of the court, whether written or oral, or a satisfactorily proved subtle defeat of its mandate is a contempt, either under the statute or at common law. *See Maddox v. Maddox, supra; Ex Parte Sturm, supra.* That the court believed that Goldsborough had intentionally violated and openly defied its order or mandate is clear from its opinion. But equally clear is the settled principle that before a person may be held in contempt for violating the court's order, he must have knowledge of it and its terms or import must be reasonably definite and specific. *Mattingly v. Houston, supra; Sellman v. Sellman, supra.* It is readily evident from the court's opinion that it was devoted to the two-fold proposition, first, that it would be unfair to the State to have any *Schwaninger* jurors sitting on the *Cole* case because they would be "honor bound" to acquit Cole, and, second, that under no circumstances should the State's case against Cole be prejudiced by apprising the *Cole* jury of the prior acquittal in the *Schwaninger* case. By its favorable action on the State's application to exclude the *Schwaninger* jurors from the *Cole* panel, and its further action denying Goldsborough's motion to dismiss for improper jury composition, the court accomplished its first purpose, and its mandate was obviously understood by Goldsborough. But as to the court's second purpose, we think its order or mandate cannot fairly be interpreted to constitute a court-imposed directive which Goldsborough understood, or should have understood, prohibited him in his opening statement from urging the *Cole* jury to "return a judgment of acquittal * * * as has already occurred in a previous case." We hold that Goldsborough's remark, considered in the context of his opening statement to the jury, did not constitute either a refusal to obey the court's order or a subtle defeat of its mandate.

That Goldsborough's statement to the jury may not

have violated, explicitly or implicitly, the gist of the court's order does not mean that his action may not have constituted a contempt. Just where zealous trial advocacy on the part of a lawyer shades into contempt of court has long been a troublesome question. See the cases collected in the Annotation at 14 L.Ed.2d 935, entitled "Attorney's Conduct As Contempt Of Court." Had it been Goldsborough's calculated purpose in referring to the prior acquittal to advance his client's cause by deliberately or intentionally attempting to prejudice the State's right to a fair jury trial, then his action would have been plainly contemptuous. But if his remark was made under an honestly entertained, though mistaken, view of the law, the fact alone that it may have tended to prejudice the State's case would not, without more, constitute contempt. *See United States v. Sopher,* 347 F. 2d 415 (7th Cir.) ; *Steinberg v. United States,* 162 F. 2d 120 (5th Cir.) ; *Sprinkle v. Davis,* 111 F. 2d 925 (4th Cir.). While it is never a complete defense to a charge of contemptuous conduct that no such conduct was intended, *Ex Parte Bowles, supra,* at pp. 332-333, where the act comprising the alleged contempt is not plainly contemptuous on its face, a claim of good faith has been held entitled to serious consideration and has been found determinative in some cases. *See May Hosiery Mills v. United States District Court,* 64 F. 2d 450 (9th Cir.) ; *Caldwell v. United States,* 28 F. 2d 684 (9th Cir.) ; *Sprinkle v. Davis, supra;* 17 C.J.S. *Contempt,* p. 20.

We share the trial judge's exasperation over Goldsborough's remark to the jury. We think it was highly improper since the acquittal of one person charged with a crime is neither relevant nor material to the issue of guilt or innocence of another person charged as a coperpetrator with the same crime. *Jefferies v. State,* 5 Md. App. 630; *Boone v. State,* 3 Md. App. 11. That the jury, under the Constitution of Maryland, are judges of law and fact in criminal cases does not mean that their action in acquitting an accused of a crime is based on any particular legal theory which may have been argued

to it, or which it might have independently entertained. It is unquestionably true, and so known to all lawyers, that acquittals by juries are frequently the result of compromise or mistake or simply because, for a variety of other reasons, the jury did not care to speak its true conclusion that the accused was in fact guilty. *See Moore v. State,* 3 Md. App. 676, 678-679. For these reasons, consistency of jury verdicts is not an essential of due process. *See Ledbetter v. State,* 224 Md. 271. For similar reasons, the verdicts of Maryland juries do not constitute a source of relevant legal authority. *Compare Phillips v. State,* 6 Md. App. 56.

It is clear from Goldsborough's affidavit of defense and from his argument on appeal that he intentionally made the remark in question. He claims that while he had some doubts as to its propriety, he nevertheless believed then, as he does now, that it was proper argument. But whether it was or not is not determinative. As heretofore indicated, if Goldsborough made the statement to the jury knowing that it was improper, or consciously made it without regard to whether it was proper or not, with the purpose of intentionally prejudicing the jury against the State and in favor of his client, then we think he committed a criminal contempt of court. The credibility of Goldsborough's defense can only be assessed by the trial judge; it is his subjective impression, derived from all the facts and circumstances in the case, which necessarily will determine the question. Under *Sheets v. City of Hagerstown, supra,* the trial judge must be convinced by "clear and satisfactory" proof that the conduct was contemptuous before he can so find. We think that the proper standard of proof in a criminal contempt case is proof beyond a reasonable doubt. *See Bloom v. Illinois,* 391 U. S. 194.

Although we are much impressed with the force and basic clarity of the trial judge's opinion, we are nevertheless uncertain as to the extent that he intended to base his contempt finding on the violation of his order or mandate. If it was the court's intention to base it

solely on such a violation, the judgment would have to be reversed. To the extent that the conviction may have been predicated on the broader considerations herein outlined, we are uncertain whether the trial judge considered the crucial element of whether Goldsborough intentionally and with calculated prejudicial purpose, made the improper argument, knowing that it was improper, or not caring whether it was or not. Under these circumstances, we deem it expedient to remand the case for further consideration by the trial judge in light of the principles developed in this opinion. We think it well that on reconsideration the trial judge view Goldsborough's remark, not as a direct reference to the *Schwaninger* case, in which there had been an acquittal by an earlier Talbot County jury, but as a general reference to some unnamed case in some unnamed jurisdiction where a jury had acquitted an accused under evidentiary circumstances similar to those involved in the *Cole* case.

> *Case remanded without affirming, reversing, or modifying the judgment, for further consideration in light of the principles set forth in this opinion.*