**Philip Eugene NOUSE**

v.

**Kathryn Vondersmith NOUSE and Patricia Vondersmith.**

**Civ. No. K–77–19.**

United States District Court,
D. Maryland.

March 30, 1978.

98

Philip Eugene Nouse, pro se.

Kathryn Vondersmith Nouse and Patricia Vondersmith, pro se.

FRANK A. KAUFMAN, District Judge.

Plaintiff,[1] proceeding pro se[2] and in forma pauperis, and presently confined in a confinement institution of the State of Pennsylvania, has filed a complaint styled "Civil Rights Complaint" in this Court. Herein plaintiff seeks declaratory and injunctive relief and damages against defendant Nouse, the latter being plaintiff Nouse's ex-wife, and the latter's mother, defendant Vondersmith. Plaintiff alleges numerous acts of interference by both defendants with his communications by mail

---

1. In his original complaint Nouse styled himself "Gene Edward Winters." Subsequently, he notified this Court that his name was changed to "Philip Eugene Nouse." Under the name Winters, plaintiff unsuccessfully sought relief in this Court in *Winters v. Brown*, No. K–74–1166 (D.Md. January 24, 1977); *Winters v. Circuit Court*, No. K–75–553 (D.Md. July 3, 1975); *Winters v. Kowitz*, No. K–74–1028 (D.Md. March 14, 1975); and *Winters v. Welsh*, No. K–74–1165 (D.Md. September 26, 1975), *aff'd*, No. 75–2245 (4th Cir. July 6, 1976).

2. Plaintiff's request that this Court appoint counsel for him in this case is hereby denied. The questions presented and determined herein are not such as to warrant appointment of counsel. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975).

and by telephone with the two children of his marriage with defendant Nouse. Plaintiff claims that defendants have destroyed mail addressed by him to the children prior to its delivery to them, and that defendants have also refused to allow the children to talk with plaintiff on the telephone. Plaintiff contends that in so doing defendants have violated the constitutional rights of plaintiff and of the children. Plaintiff, in his complaint, refers to several Maryland state court proceedings relating to his domestic relations with defendant Nouse, alleging that he has been granted in those proceedings certain rights to visit and communicate with his children. Plaintiff and defendant Nouse were divorced in the Circuit Court of Baltimore County, Maryland, on July 16, 1974. Custody of the two children in question was awarded to defendant Nouse. However, plaintiff states that another action for divorce between himself and defendant Nouse is pending in the Court of Common Pleas of Dauphin County, Pennsylvania. Defendants have responded pro se, denying plaintiff's allegations of interference with his attempts to communicate with the children, and seeking dismissal of the within action.[3]

█ Plaintiff alleges jurisdiction exists under 28 U.S.C. § 1343, the jurisdictional counterpart of certain post-Civil War civil rights statutes. In order for jurisdiction to exist under section 1343, a complaint must at a minimum seek recovery under one of the substantive statutes to which section 1343 relates.[4]

█ We start with 42 U.S.C. § 1983. It does not apply because plaintiff has not alleged, or suggested any facts to show, that defendants acted under color of state law. Assuming that defendant Nouse's custody of the children derives from orders or decrees of one or more Maryland state courts, her actions, whether pursuant to those orders or decrees or otherwise, do not constitute state action for section 1983 purposes. *Colechandise v. Murdaugh*, No. 77–1625, slip op. at 3, (4th Cir. December 1, 1975); [5] *Merrick v. Merrick*, 441 F.Supp. 143 (S.D.N.Y.1977).[6]

█ Nor has plaintiff alleged a cause of action under 42 U.S.C. § 1985(3) for conspiracy to deprive him of his rights. As Judge Craven wrote in *Doski v. M. Goldseker Co.*, 539 F.2d 1326, 1333 (4th Cir. 1976):

The scope of § 1985(3) was defined in *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) as follows:

To come within the legislation a complaint must allege that the defendants did (1) 'conspire . . .' (2) 'for the

---

3. Plaintiff has objected to the alleged late filing of that response and to certain alleged failures of the defendants to comply with certain provisions of the Federal Rules of Civil Procedure as to timing and form of certain documents submitted by defendants. Assuming arguendo the existence of all such alleged defaults and failures, they have in no way prejudiced plaintiff and are de minimis.

4. *Campbell v. Gadsden County Dist. School Bd.*, 534 F.2d 650, 653 n. 3 (5th Cir. 1976); *Gay Lib v. University of Missouri*, 416 F.Supp. 1350, 1361 & n. 13 (W.D.Mo.1976), *rev'd on other grounds*, 558 F.2d 848 (8th Cir. 1977). *See City of Kenosha v. Bruno*, 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973).

5. The unpublished per curiam opinion in that case has been placed in the Court file in this case.

6. In that case, in which plaintiff sought injunctive and declaratory relief against his ex-wife, under 42 U.S.C. § 1983, with respect to her custody of their child, the Court (at 146) wrote:

In order to state a valid claim under 42 U.S.C. § 1983, defendants must have deprived plaintiff, arguably, of rights guaranteed by the Constitution and laws of the United States under color of state law. Plaintiff alleges that Mrs. Merrick has proceeded to extort money from him "under color and protection of State executive inaction and judicial custom . . . ." There is no authority for the proposition that a person who employs the state's judicial processes, as has Mrs. Merrick, is thereby clothed with the state's authority. *See, Stevens v. Frick*, 372 F.2d 378 (2d Cir. 1967), *cert. denied* 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 973 (1967); *Gras v. Stevens*, 415 F.Supp. 1148, 1152 (S.D.N.Y.1976) (three-judge court, Friendly, J.).

Thus, Mr. Merrick's complaint fails to state a claim under § 1983 and must be dismissed as to Mrs. Merrick.

purpose of depriving, either directly or indirectly, any person or class of persons of the *equal protection of the laws, or of equal privileges and immunities under the laws.*' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' *or* (4b) 'deprived of having and *exercising any right or privilege* of a citizen of the United States.' (Emphasis added).

Assuming without deciding that all the above requirements are satisfied and that a sex-based conspiracy qualifies as an "otherwise class-based invidiously discriminatory animus" so as to meet the intent requirement of the statute, the issue becomes the same that we faced in *Bellamy v. Mason's Stores, Inc. (Richmond)*, 508 F.2d 504 (4th Cir. 1974)—what is the nature of the legal right denied? [11] [Footnote 10 omitted.]

[11] We believe the issues of whether a sex-based conspiracy meets *Griffin*'s requirement of "class-based discriminatory animus" and the nature of the "right" being denied are two separate and distinct issues and that satisfaction of the first does not automatically create a federally protected right. [Citations omitted.]

No "class-based discriminatory animus" is involved herein.

Finally, plaintiff has not alleged any violation of any other substantive federal stat-

**7.** If any civil remedy is created by 18 U.S.C. § 1702, the latter's jurisdictional counterpart would seemingly be 28 U.S.C. § 1339 and not 28 U.S.C. § 1343. For reasons indicated *infra*, that question need not be pursued herein.

**8.** Plaintiff brought this action under 28 U.S.C. § 1651, which provides, in part, as follows:
(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
It is settled that this section, known as the All Writs Act, by itself, creates no jurisdiction in the district courts. It empowers them only to issue writs in aid of jurisdiction previously acquired on some other independent ground. [Citations omitted.]
*Brittingham v. Commissioner*, 451 F.2d 315, 317 (5th Cir. 1971).

ute to which section 1343 relates, except perhaps 18 U.S.C. § 1702 discussed *infra*, which is inapplicable for reasons hereinafter explicated.[7]

Plaintiff also alleges jurisdiction under 28 U.S.C. § 1651. But that statute provides no independent jurisdictional basis.[8] Plaintiff has not suggested the possibility of any jurisdictional basis other than sections 1343 and 1651. However, because plaintiff is proceeding pro se, this Court examines herein the possible application of jurisdictional provisions not alleged by plaintiff to exist,[9] including diversity jurisdiction. Plaintiff presently is a prisoner in a Pennsylvania institution. Defendants are citizens of Maryland. But plaintiff has not lost his status as a citizen of Maryland and become a citizen of Pennsylvania simply because of his detention in that state. *See* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3618, 749–51. Plaintiff has in no way indicated he has taken as his home any state other than Maryland. However, even assuming arguendo only that plaintiff is not a citizen of Maryland and that defendants are Maryland citizens, diversity jurisdiction still does not exist. That is because plaintiff's claims herein relate to child custody and visitation and communication rights in connection therewith. As such, they fall within the domestic relations exception to federal diversity jurisdiction.[10]

**9.** *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

**10.** Since the very early dicta *In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890), it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and, *a fortiori*, rights of visitation. [Citations omitted.]
\* \* \* \* \* \*
Finally, as noted by Judge Cooper below, it appears to be settled law that custody and visitation rights are incapable of being reduced to any pecuniary standard of value. Consequently, the action here does not meet the $10,000 jurisdictional amount required by both 28 U.S.C. Sections 1331 and 1332. [Citation omitted.]
*Hernstadt v. Hernstadt*, 373 F.2d 316, 317–18 (2d Cir. 1967).

■ There remains one additional issue for exploration, namely, since plaintiff asserts that defendants have destroyed mail, whether that claim states a cause of action under 28 U.S.C. § 1339 and 18 U.S.C. § 1702. The former provides:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service.

The latter provides:

> Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

While 28 U.S.C. § 1702 speaks solely of criminal sanctions for obstruction of correspondence, the question arises as to whether a civil remedy should be implied thereunder. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), Mr. Justice Brennan, speaking for a unanimous Court, in the course of stating the principles governing implication of a federal civil remedy from a federal criminal statute,[11] wrote as follows (at 78–80, 95 S.Ct. at 2088):

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874 (1916) (emphasis supplied)— that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? [Citation omitted.] Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? [Citations omitted.] And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [Citations omitted.]

The dissenting judge in the Court of Appeals and petitioners here suggest that where a statute provides a penal remedy alone, it cannot be regarded as creating a right in any particular class of people. "Every criminal statute is designed to protect some individual, public, or social interest . . . . To find an implied civil cause of action for the plaintiff in this case is to find an implied civil right of action for every individual, social, or public interest which might be invaded by violation of any criminal statute. To do this is to conclude that Congress intended to enact a civil code companion to the criminal code." 496 F.2d, at 428–429 (Aldisert, J., dissenting). [Citation omitted.]

Clearly, provision of a criminal penalty does not necessarily *preclude* implication of a private cause of action for damages. [Citations omitted.] However, in Wyandotte, Borak, and Rigsby, there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone. Here, there was nothing more than a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone.

We need not, however, go so far as to say that in this circumstance a bare criminal statute can *never* be deemed sufficiently protective of some special group so as to give rise to a private cause of action by a member of that group. For the intent to protect corporate sharehold-

---

11. In *Cort* the criminal statute was 18 U.S.C. § 610, which prohibited, *inter alia*, corporations from making contributions or expenditures in any Presidential or Vice-Presidential election.

ers particularly was at best a subsidiary purpose of [the statute in question], and the other relevant factors all either are not helpful or militate against implying a private cause of action. [Footnote omitted.]

The courts to date confronted with the issue have concluded that no civil remedy should be implied under section 1702. *Berlin Democratic Club v. Rumsfeld*, 410 F.Supp. 144, 162 (D.D.C.1976); *Pope v. Bruckno*, 330 F.Supp. 793, 795 (E.D.Pa. 1971), and *Pope v. Hendricks*, 326 F.Supp. 699, 701 (E.D.Pa.1971). *See also Hill v. Sands*, 403 F.Supp. 1368, 1370 (N.D.Ill.1975). The views stated in those cases comport with the teachings of *Cort v. Ash*.

"What is now § 1702 is an old statute and is designed to protect the mails and correspondence moving therein from theft, embezzlement, obstruction, and meddlesome prying." *United States v. Ashford*, 530 F.2d 792, 795 (8th Cir. 1976). Section 1702 was originally enacted in 1810 in very substantially the same words as the present statute.[12] The Act of April 30, 1810, of which that statute was a part, was entitled "An Act regulating the Post-office Establishment," and included various provisions seemingly covering all aspects of the postal system.[13] To a large extent, the Act of April 30, 1810, merely reenacted the original legislation which established the post office.[14] The prohibition against obstruction of correspondence thus originated as part of a comprehensive scheme to establish and to regulate the nation's postal system. That prohibition was later recodified, without substantial change, as part of the Criminal title of the U.S.Code.[15] The report [16] of the Senate Committee responsible for that recodification states in part:

Under the classification "Crimes against operations of the Government," in the present codification, are included offenses against the currency and against the postal service. It has seemed to your committee that to assemble all penal provisions for protection of the currency and coinage under a separate head, and all penal legislation for protection of the postal service under another, will greatly simplify the arrangement and afford readier access to the law in every case. Hence these two new chapters.

Plaintiff would not appear to be one for whose " '*especial* benefit,' " *Cort v. Ash*, 422 U.S. 66 at 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (emphasis in original), section 1702 was enacted or reenacted. Nor is there any indication the Congress intended at any time to provide a civil remedy to enforce section 1702. Further, the remedies plaintiff seeks (injunctive and declaratory relief as well as damages) would seemingly add little to the deterrence already provided by the criminal remedy. Also, the trial of such civil actions would almost surely consume substantial time of postal employees. Finally, the basic subject matter of plaintiff's claims re problems with and concerning his ex-wife, her mother and children of his ex-wife and himself is a subject which historically has been left to the purview of the state courts, and in connection with which the state courts have provided meaningful remedies. In this instance plaintiff seemingly has available to him a meaningful remedy under Maryland law. According to plaintiff's al-

12. Ch. 37, § 19, 2 Stat. 598 (1810) read in pertinent part:

And if any person shall take any letter or packet, not containing any article of value or evidence thereof, out of a post-office, or shall open any letter or packet which shall have been in a post-office, or in the custody of a mail carrier, before it shall have been delivered to the person to whom it is directed, with a design to obstruct the correspondence, to pry into another's business or secrets, or shall secrete, embezzle or destroy any such mail, letter or packet, such offender, upon conviction, shall pay for every such offence a sum not exceeding five hundred dollars.

13. Ch. 37, 2 Stat. 592 (1810).

14. *See* Ch. 23, 1 Stat. 354 (1794); Ch. 7, 1 Stat. 232 (1792).

15. Ch. 321, § 194, 35 Stat. 1125 (1909).

16. S.Rep. No. 10, 60th Cong., 1st Sess. at 7–8.

legations, the children are presently in the custody of defendant Nouse pursuant to an order of the Circuit Court of Baltimore County, Maryland. The record herein does not disclose whether that decree covers correspondence between plaintiff Nouse and his children. But, whether it does or does not, plaintiff can seemingly seek to have such order modified in that and related regards. *See Young v. Weaver*, 185 Md. 328, 44 A.2d 748 (1945); Md.Cts. & Jud. Proc.Code Ann., § 3–602(a).[17] Further, a Maryland court apparently may enforce such provisions in its decree, in appropriate circumstances, by the use of the contempt power. *Maddox v. Maddox*, 174 Md. 470, 474, 477–78, 199 A. 507 (1938). *See also Miller v. Miller*, 247 Md. 358, 362, 231 A.2d 27 (1967).

The special competence of state courts to handle matters of this kind is a significant reason for the domestic relations exception to the federal diversity jurisdiction discussed above.[18] In sum, in this case, it is entirely appropriate to relegate plaintiff herein to such remedies as are available under state law, and "inappropriate to infer a cause of action based solely on federal law," *Cort v. Ash, supra* 422 U.S. at 78, 95 S.Ct. at 2088, in this instance, 18 U.S.C. § 1702.[19]

For the reasons set forth above the complaint fails to state a claim upon which relief may be granted and will accordingly

17. *See Singewald v. Singewald*, 165 Md. 136, 149, 166 A. 441 (1933). *See also Aynes v. Scheer*, 229 Ga. 205, 190 S.E.2d 34 (1972); *Paine v. Paine*, 201 A.2d 20, 21–22 (D.C.1964); *Chadwick v. Chadwick*, 275 Mich. 226, 266 N.W. 331, 332 (1936).

18. *See Solomon v. Solomon*, 516 F.2d 1018, 1025–26 (3rd Cir. 1975); *Cherry v. Cherry*, 438 F.Supp. 88, 89–90 (D.Md.1977) (Northrop, C. J.). *See also Sosna v. Iowa*, 419 U.S. 393, 404, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). As to wire-tapping by one spouse of conversations engaged in by the other spouse, *see Anonymous v. Anonymous*, 558 F.2d 677 (2d Cir. 1977); *Simpson v. Simpson*, 490 F.2d 803, 804–06 (5th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 176, 42 L.Ed.2d 141 (1974). *See also* in that latter regard *United States v. Jones*, 542 F.2d 661 (6th Cir. 1976).

be dismissed, and judgment will be entered for defendants.[20]

19. There is no need herein to reach the question of whether or not a civil remedy could *ever* be implied under 18 U.S.C. § 1702. *See Vernars v. Young*, 539 F.2d 966, 969 (3rd Cir. 1976); *United States v. Maxwell*, 137 F.Supp. 298, 303 (W.D.Mo.1955), *aff'd*, 235 F.2d 930 (8th Cir.), *cert. denied*, 352 U.S. 943, 77 S.Ct. 266, 1 L.Ed.2d 239 (1956); *Cohen v. Cohen*, 26 Tex.Civ.App. 315, 63 So. 544, 545 (1901).

20. The question of whether the plaintiff's claims are so patently without merit as to call for dismissal for want of jurisdiction does not need to be reached herein. *See Mount Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 278–79, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Hagans v. Lavine*, 415 U.S. 528, 534–43, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).