525 A.2d 1054

**In re ANN M.**

**No. 94, Sept. Term, 1986.**

Court of Appeals of Maryland.

June 2, 1987.

Julia Doyle Bernhardt, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Valerie W. Loftin, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, J. Donald Braden, State's Atty., for Queen Anne's County and Marshall Long, Asst. State's Atty., on the brief), Centreville, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE,

**566**

COLE, RODOWSKY, COUCH,* McAULIFFE and ADKINS, JJ.

MURPHY, Chief Judge.

This case involves the conviction of a fifteen-year-old juvenile for constructive criminal contempt of a juvenile court order directing that she "attend school regularly."

I

By petition filed on February 1, 1985, in the Circuit Court for Queen Anne's County, Ann M. was alleged to be a child in need of supervision (CINS) as defined in the Juvenile Causes Act, Maryland Code (1984) § 3–801(f) of the Courts and Judicial Proceedings Article.[1] The petition alleged that Ann had been absent approximately forty percent of the preceding school year without valid excuse. The petition was dismissed when it was discovered that Ann was pregnant.

A second petition was thereafter filed on March 5, 1985 alleging that Ann was a child in need of assistance (CINA), as defined in § 3–801(e) of the Courts Article.[2] The circuit

---

\* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Section 3–801(f) defines a CINS as
   "a child who requires guidance, treatment, or rehabilitation and
   (1) He is required by law to attend school and is habitually truant; and
   (2) He is habitually disobedient, ungovernable, and beyond the control of the person having custody of him; or
   (3) He deports himself so as to injure or endanger himself or others; or
   (4) He has committed an offense applicable only to children."

2. Section 3–801(e) defines a CINA as
   "a child who requires the assistance of the court because
   (1) He is mentally handicapped or is not receiving ordinary and proper care and attention, and,
   (2) His parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and his problems

court, sitting as the juvenile court, adjudicated Ann to be a CINA and committed her to the custody of the County Department of Social Services (DSS) until the birth of her child. Ann later absconded from the foster home in which DSS had placed her and returned to her mother's home. Subsequently, on May 20, 1985, the juvenile court rescinded DSS's custody of Ann.

On November 5, 1985, the juvenile court (Carter, J.) conducted a hearing to determine whether Ann should remain in the custody of her mother. During the hearing, evidence revealed that Ann continued her frequent unexplained absences from school. The trial judge orally ordered her to attend school regularly in accordance with Maryland's compulsory school attendance law, Code (1985) § 7–301(a) of the Education Article.[3] He also ordered Ann's mother to require Ann's regular attendance at school, citing § 3–827 of the Courts Article as authority for the two orders.[4]

---

provided, however, a child shall not be deemed to be in need of assistance for the sole reason he is being furnished nonmedical remedial care and treatment recognized by State law."

3. That section provides:
"Each child who resides in this State and is 6 years old or older and under 16 shall attend a public school regularly during the entire school year unless the child is otherwise receiving regular, thorough instruction during the school year in the studies usually taught in the public schools to children of the same age."

4. Section 3–827 states:
"Pursuant to the procedure provided in the Maryland Rules, the court may make an appropriate order directing, restraining, or otherwise controlling the conduct of a person who is properly before the court, if:
(1) The court finds that the conduct:
(i) Is or may be detrimental or harmful to a child over whom the court has jurisdiction; or
(ii) Will tend to defeat the execution of an order or disposition made or to be made; or
(iii) Will assist in the rehabilitation of or is necessary for the welfare of the child; and
(2) Notice of the application or motion and its grounds has been given as prescribed by the Maryland Rules."

Upon learning that Ann continued her absences from school, and thus had violated the juvenile court's order, Judge Carter cited her for constructive criminal contempt. A hearing was held on February 13, 1986 in the juvenile court before Judge Rasin who found that Ann had "wilfully disobeyed an order of this Court given in an effort to try to get [her] as much education as [she could] to be better able to take [her] place in life." The judge held that, "as a punishment for [her] contemptuous conduct in failing to go to school as ... directed by Judge Carter [Ann M.] shall be committed to the custody of the Sheriff of Queen Anne's County for a period of thirty (30) days." The court then suspended the actual incarceration until such time as Ann failed to attend school without a valid excuse. After Ann's appeal to the Court of Special Appeals had been filed, but before consideration by that court, we issued a writ of certiorari on our own motion to address the significant question raised in the case.

## II

Code, § 1–202(a) of the Courts Article authorizes a court to "exercise the power to punish for contempt of court or to compel compliance with its commands in the manner prescribed by the Maryland Rules." Subtitle P of Chapter 1100 of the Maryland Rules (1987) applies to both civil and criminal contempts, both direct and constructive, and is expressly applicable to juvenile causes. *See* Md. Rule 910 e 2. Rule P1 a defines a "direct contempt" as one "committed in the presence of the court, or so near to the court as to interrupt its proceedings." Rule P1 b defines a "constructive contempt" as one "which was not committed in the presence of the court, or so near to the court as to interrupt its proceedings." As our cases indicate, however, the contempt powers of Maryland courts generally exist independent of statute; their power to punish for contempt arises from the common law and is deemed essential for the protection and existence of the courts. *See Hitzelberger v. State,* 173 Md. 435, 196 A. 288 (1938); *Ex Parte Sturm,* 152

Md. 114, 136 A. 312 (1927); *Ex Parte Maulsby*, 13 Md. 625 (1857); *Goldsborough v. State*, 12 Md.App. 346, 278 A.2d 623 (1971). A criminal contempt arises from a deliberate effort or a wilful act of commission or omission by the alleged contemnor committed with the knowledge that it would frustrate the order of the court; the sanction imposed is punitive and determinate. *State v. Roll*, 267 Md. 714, 730, 298 A.2d 867 (1973). A civil contempt proceeding usually arises upon the complaint of a private person and primarily affords relief to that individual. It is not a separate or independent action but is filed in, and is a continuation of, the original action. The acts complained of do not themselves constitute crimes or conduct by the defendant so wilful or contumelious that the court is compelled to act on its own motion. The sanction imposed for civil contempt is coercive and must allow for purging. *Roll*, *supra*, 267 Md. at 729–730, 298 A.2d 867.

In this case the parties agree that the court treated Ann's refusal to obey the oral order of the juvenile court as a criminal contempt, a common law offense.[5] Ann contends, however, that the court had no authority to order her to attend school. She maintains that, although such an order could be an appropriate disposition for a CINS under § 3–801(f), it was inappropriate and illegal in her case because she had only been adjudged a CINA under § 3–801(e). She further alleges that, even if the order was legal, a finding of criminal contempt for disobeying the order is inconsistent with the purposes of the Juvenile Causes Act and with § 7–301(e)(2) of the Education Article, which provides that parents, not their children, be the party subjected to criminal punishment for a child's habitual truancy.[6] According to the State, however, a juvenile court

---

**5.** The refusal to obey an order of court, whether oral or written, may constitute a contempt. *See Weaver v. State*, 244 Md. 640, 224 A.2d 684 (1966); *Maddox v. Maddox*, 174 Md. 470, 199 A. 507 (1938); *Goldsborough, supra*.

**6.** Section 7–301(e)(2) provides:

may, pursuant to § 3–827 (*supra*, n. 4) of the Juvenile Causes Act, order a child to participate in rehabilitative services that are in the child's best interests, and failure to obey such an order may constitute a contempt. Both Ann and the State nonetheless agree that the court did not have the authority to impose a 30–day suspended sentence that could result in Ann's being confined in a penal facility. Ann requests, therefore, that the sentence be vacated; the State suggests that the case be remanded to the juvenile court for the limited purpose of clarifying or modifying its disposition.

### III

The exercise of the contempt power "demands care and discretion in its use so as to avoid arbitrary, capricious or oppressive application." *State v. Roll, supra,* 267 Md. at 717, 298 A.2d 867. Moreover, as we indicated in *Roll,* both as to direct and constructive contempts, "the limits of the power to punish for contempt are 'the least possible power adequate to the end proposed.'" *Id.* at 734, 298 A.2d 867 (quoting *Harris v. United States,* 382 U.S. 162, 165, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965)).

■ Under the Juvenile Causes Act, no disposition of a juvenile petition, whether of a delinquent, CINA or a CINS, may result in a criminal conviction. § 3–824. Nor may a juvenile court, in exercising its jurisdiction under the Act, commit a child to an adult penal facility, § 3–823(a), or in the case of a CINA or CINS, to a facility used to confine delinquent children. § 3–823(b). While Ann's conviction for criminal contempt, and her sentence to an adult detention center, were not the result of a disposition of a juvenile petition, the sanction imposed was plainly inconsistent with

---

"Any person who has control over a child who is 6 years old or older and under 16 who fails to see that the child attends school or receives instruction under this section is guilty of a misdemeanor and on conviction is subject to a fine not to exceed $50 per day of unlawful absence or imprisonment not to exceed 10 days, or both."

the rationale undergirding these statutory imperatives in the treatment of juveniles. In this regard, we have reminded judges exercising juvenile jurisdiction to bear in mind that juvenile proceedings are of a special nature designed to meet problems peculiar to the adolescent, *In re Fletcher*, 251 Md. 520, 529, 248 A.2d 364 (1968); and that the juvenile law has as its underlying concept the protection and rehabilitation of juveniles, rather than the imposition of punitive sanctions. *In re Johnson*, 254 Md. 517, 255 A.2d 419 (1969).[7]

While the juvenile court clearly possesses authority to find a juvenile in contempt of court, the exercise of that authority is necessarily tempered by the prevailing philosophy that, absent waiver of juvenile jurisdiction, a child who commits a criminal act should not be stigmatized with a criminal record or otherwise treated as a criminal offender. *See, e.g., State ex rel, L.E.A. v. Hammergren*, 294 N.W.2d 705 (Minn.1980), holding that in view of the juvenile statute's express disapproval of confining juveniles in secure facilities, juvenile courts should not order such confinement for contempt of court unless there is no less restrictive alternative which could accomplish the court's purpose.

█ We think the exercise of the contempt power in this case was not appropriate in the circumstances. Assuming

---

**7.** The purposes of the Juvenile Causes Act, as set forth in § 3–802, are these:

"(1) To provide for the care, protection and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest;

(2) To remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior;

(3) To conserve and strengthen the child's family ties and to separate a child from his parents only when necessary for his welfare or in the interest of public safety;

(4) If necessary to remove a child from his home, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents;

(5) To provide judicial procedures for carrying out the provisions of this subtitle."

that an order directing a CINA regularly to attend school may properly be entered in a CINA proceeding, we nevertheless think that the juvenile judge should have considered available alternatives to criminal conviction. Indeed, the Juvenile Causes Act expressly contemplates in § 3–801(f)(1) that a child "required by law to attend school ... [but who] is habitually truant" be proceeded against by a CINS petition and thus afforded the requisite guidance, treatment, or rehabilitation contemplated by the exercise of CINS jurisdiction.

We think the court's failure to first consider the availability of this alternative when dealing with a CINA, and with an alleged indirect contempt of court, constituted an abuse of the court's criminal contempt power, and our holding in this case is specifically so limited. In so holding, we have considered cases from other jurisdictions involving contempts by juveniles, including status offenders like CINS or CINA who may have failed to adhere to orders of a juvenile court. Under varying factual circumstances, and diverse juvenile statutes, some courts have held that juvenile judges violated their criminal contempt powers when convicting a juvenile of direct or constructive contempts. *See, e.g., In re Mary D.,* 95 Cal.App.3d 34, 156 Cal.Rptr. 829 (1979); *In re Ronald S.,* 69 Cal.App.3d 866, 138 Cal.Rptr. 387 (1977); *W.M. v. State,* 437 N.E.2d 1028 (Ind.Ct.App. 1982); *State in re Bellanger,* 357 So.2d 634 (La.Ct.App. 1978). Other courts, in some circumstances, have upheld criminal contempt convictions for juveniles who disobey juvenile court orders. *See, e.g., L.A.M. v. State,* 547 P.2d 827 (Alaska 1976); *In re G.B.,* 88 Ill.2d 36, 58 Ill.Dec. 845, 430 N.E.2d 1096 (1981); *In Interest of Darlene C.,* 278 S.C. 664, 301 S.E.2d 136 (1983); *see also In the Interest of Tasseing H.,* 281 Pa.Super. 400, 422 A.2d 530 (1980); *State v. Norlund,* 31 Wash.App. 725, 644 P.2d 724 (1982); *In the Interest of D.L.D.,* 110 Wis.2d 168, 327 N.W.2d 682 (1983).[8]

---

**8.** *Thomas v. State,* 21 Md.App. 572, 320 A.2d 538, *cert. denied,* 272 Md. 749 (1974) involved a juvenile observer at a criminal trial who

Nothing in these cases, however, dissuades us from the view that Ann's conviction of criminal contempt was well in excess of "the least possible power adequate to the end proposed." *Harris v. United States, supra,* 382 U.S. at 165, 86 S.Ct. at 354.

JUDGMENT REVERSED WITH COSTS.

disrupted the proceeding and was convicted of a direct criminal contempt. The juvenile argued that the conviction was illegal because under the Juvenile Causes Act, he was not subject to a criminal sanction and could only be proceeded against as a delinquent in a juvenile court. The court concluded that in adopting the Act, the Legislature "never intended to deprive the courts of their authority to punish for direct contempt, those who commit such an act, be they juvenile or adult." 21 Md.App. at 578, 320 A.2d 538. The court said that § 3-804 of the Act, which conferred exclusive original jurisdiction in the juvenile court, was inappropriate in a case of direct contempt committed in another court, and that the court in which the contempt occurred possessed full power to punish the contemptuous juvenile in the same manner as any adult who committed a similar offense. *Id.* at 578, 579, 320 A.2d 538.